No. 23-1078

---

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

---

B.P.J., by her next friend and mother, HEATHER JACKSON,

     *Plaintiff-Appellant*,

v.

WEST VIRGINIA STATE BOARD OF EDUCATION, HARRISON COUNTY BOARD OF EDUCATION , WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION, W. CLAYTON BURCH in his official capacity as State Superintendent, DORA STUTLER in her official capacity as Harrison County Superintendent, and THE STATE OF WEST VIRGINIA,

     *Defendants-Appellees*,

AND

LAINEY ARMISTEAD,

     *Intervenor-Appellee,*

---

On Appeal from the United States District Court
For the Southern District of West Virginia
Hon. Joseph R. Goodwin
Case No. 2:21-cv-00316

---

**APPELLEES HARRISON COUNTY BOARD OF EDUCATION AND DORA STUTLER'S RESPONSE TO APPELLANT B.P.J.'S <u>MOTION FOR STAY PENDING APPEAL</u>**

*Counsel listed on the following page*

16014445

STEPTOE & JOHNSON PLLC
Of Counsel

Susan L. Deniker   (WV Bar ID #7992)
400 White Oaks Boulevard
Bridgeport WV  26330-4500
Phone:  304-933-8154
Fax:       304-933-8747
Email:  susan.deniker@steptoe-johnson.com

*Counsel for Harrison County Board of Education and Dora Stutler, Defendants-Appellees*

16014445

Table of Contents

Page

I.  INTRODUCTION ..................................................................................1

II.  ARGUMENT ......................................................................................3

  A.  The District Court Applied The Correct Legal Standard In Denying
     The Stay. ..........................................................................................3

  B.  The "Substantial Case On The Merits" Is Not The Correct Standard..............5

  C.  The Motion Should Be Denied Because All Four Of The *Nken* Factors
     Support Denying The Motion..........................................................6

    1.  B.P.J. Will Not Likely Succeed On The Merits Of Her Appeal................7

      a.  B.P.J. is not likely to succeed on her Equal Protection Clause claim...8

      b.  B.P.J. is not likely to succeed on her Title IX claim.............................14

    2.  B.P.J. Will Not Be Irreparably Injured Absent A Stay...........................17

    3.  The County Board Would Be Harmed If A Stay Is Entered, And A
      Stay Would Not Serve The Public Interest. ............................................19

    4.  The Equities Do Not Strongly Favor A Stay Pending Appeal. ..............20

III.  CONCLUSION ..........................................................................................21

16014445

Table of Authorities

Page

**Cases**

*Clark, By and Through Clark v. Arizona Interscholastic Ass'n*, 695 F.2d 1126
  (9th Cir. 1982) ...................................................................................10

*Cohen v. Brown Univ.*, 991 F.2d 888 (1st Cir. 1993) .............................................15

*Foster v. Gilliam*, 515 U.S. 1301 (1995) ...................................................................5

*Grimm v. Gloucester County Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020)............. *passim*

*H.B. Rowe Co. v. Tippett*, 615 F.3d 233 (4th Cir. 2010) ..........................................8

*Harley v. Wilkinson*, 988 F.3d 766 (4th Cir. 2021) .................................................13

*Hilton v. Braunskill*, 481 U.S. 770 (1987) .........................................................5, 6

*Long v. Robinson*, 432 F.2d 977 (4th Cir. 1970) .....................................................7

*Nken v. Holder*, 556 U.S. 418 (2009) ............................................................. 3, 4, 7

*Nordlinger v. Hahn*, 505 U.S. 1 (1992) ...................................................................8

*O'Connor v. Bd. of Ed. of Sch. Dist. No. 23*, 645 F.2d 578 (7th Cir. 1981)............15

*U.S. v. Mahin*, 668 F.3d 119 (4th Cir. 2012) .........................................................14

*U.S. v. Virginia*, 518 U.S. 515 (1996)......................................................................8

**Statutes**

West Virginia Code § 18-2-25d............................................................ 1, 16, 17, 19

**Regulations**

34 C.F.R. § 106.41 ........................................................................................ 15, 17

16014445

# I.  __INTRODUCTION__

Defendants-Appellees the Harrison County Board of Education ("HCBOE") and County Superintendent Dora Stutler ("Stutler") (collectively, the "County Board"), by counsel, hereby respond in opposition to Plaintiff-Appellant B.P.J.'s Motion for Stay Pending Appeal.  B.P.J. is a 12-year-old transgender girl who attends middle school in the Harrison County, West Virginia school district. This action stems from B.P.J.'s challenge of the West Virginia legislature's enactment of West Virginia Code § 18-2-25d (the "Act").[1]

In general, this Act addresses who may participate on school sports teams in West Virginia.  The Act defines "male" and "female" based on "biological sex determined at birth" and provides that "[a]thletic teams or sports designated for females, women, or girls shall not be open to students of the male sex where selection for such teams is based upon competitive skill or the activity involved is a contact sport."  W. Va. Code § 18-2-25d(b), (c)(2).  Based on this language, any student who

---

[1] From the outset of this case, the HCBOE and Superintendent Stutler have taken the position that they cannot be liable because they are not the parties that caused any potential or actual injury to B.P.J. as they did not create, develop, propose, support or pass the West Virginia statute at issue in this civil action.  Rather, the Act was enacted by the West Virginia Legislature and signed by the Governor.  As a result, to the extent that B.P.J. suffers any injury due to the Act, that injury will be caused by the State of West Virginia.  While the HCBOE and Superintendent Stutler did not have any role in the passage of the Act, B.P.J. has asserted claims seeking equitable and monetary damages (including costs, expenses, and attorneys' fees) against them.  Thus, the HCBOE and Superintendent Stutler find themselves in the position of having to defend a statute they had no part in creating or passing.

1

16014445

was born as a male, but who identifies as a transgender female, is not permitted to play on a girls' school sports team.

After filing her Complaint challenging the Act, the District Court initially granted B.P.J. a preliminary injunction which allowed her, and only her, to participate on girls' school sports teams (A-065 to A-066).[2] The injunction did not apply to any other transgender student. After the parties engaged in extensive discovery on B.P.J.'s claims, and developed a factual record, with extensive expert witness testimony, the District Court ultimately found that the Act was constitutionally and legally valid and granted summary judgment for Defendants-Appellees the HCBOE, County Superintendent Stutler, the West Virginia State Board of Education, State Superintendent W. Clayton Burch, and the State of West Virginia and for Intervenor-Appellee Lainey Armistead. Since the Act was valid, the District Court also dissolved the preliminary injunction, which only applied to B.P.J.

B.P.J. subsequently filed a motion for a stay pending appeal with the District Court. The District Court, however, denied B.P.J.'s motion. Now, B.P.J. has filed a motion for a stay with this Court. In her motion, B.P.J. seeks to obtain a stay of the District Court's decision to dissolve the preliminary injunction which

---

[2] This citation is to the Appendix filed with B.P.J.'s Motion for Stay Pending Appeal, which is currently pending before this Court.

allowed her, and only her, to participate on girls' school sports teams. As explained below, a stay is not proper as B.P.J. cannot meet the four factors that the Court must examine when determining whether to grant a stay pending an appeal. Moreover, the equities do not favor a stay pending the appeal.

## II.   ARGUMENT

### A.   The District Court Applied The Correct Legal Standard In Denying The Stay.

In her motion, B.P.J. argues that the District Court "erroneously applied the preliminary injunction standard, requiring B.P.J. to show a likelihood of success on the merits—not just a substantial merits case—to obtain a stay pending appeal." *Appellant's Motion, p. 13*. In *Nken v. Holder*, 556 U.S. 418 (2009), however, the United States Supreme Court held that when ruling on a motion to stay an order,

> a court considers four factors: "(1) whether the **stay applicant has made a strong showing that he is likely to succeed on the merits**; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987).

*Nken*, 556 U.S. at 426, 434 (emphasis added). The Supreme Court further stated that "[t]he first two factors of the traditional standard are the most critical[,]" and that "'[m]ore than a mere 'possibility' of relief is required.'" *Id.* at 434 (quoting briefs filed by Petitioner and Respondent).

In denying B.P.J.'s motion for a stay, this is the exact standard that the

3

District Court applied in its Order denying the stay (A-337 to A-338). Indeed, under the "Legal Standard" section of its Order, the District Court quoted the above standard directly from *Nken*, and further stated that "'[t]he first two factors . . . are the most critical,' and a party seeking a stay must demonstrate more than a mere possibility of success on the merits." (*Id.*) (quoting and citing *Nken*, 556 U.S. at 434).

In applying the above legal standard, the District Court did not, as claimed by B.P.J., erroneously apply the preliminary injunction standard. Rather, the District Court applied the legal standard that was recognized and adopted by the Supreme Court. In fact, the District Court analyzed each of the four factors, and ultimately concluded that B.P.J. could not meet the first factor because she was not likely to succeed on her as-applied challenge or facial challenge (A-338 to A-341). As noted above, and as recognized by the Supreme Court in *Nken*, the first factor examines "'whether the stay applicant has made a **strong showing that [s]he is likely to succeed on the merits**[.]'" *Nken*, 556 U.S. at 426 (quoting *Hilton*, 481 U.S. at 776) (emphasis added). This is exactly how the District Court analyzed B.P.J.'s motion, and thus, the District Court did not commit error by applying the wrong standard in denying the motion for a stay.

4

**B.      The "Substantial Case On The Merits" Is Not The Correct Standard.**

In her motion, B.P.J. asserts that a stay should be granted if she can demonstrate a substantial case on the merits, which purportedly is a lower standard. To support her argument, B.P.J. cites to *Hilton v. Braunskill*, 481 U.S. 770 (1987) and *Foster v. Gilliam*, 515 U.S. 1301 (1995). Those cases, however, are distinguishable. In both *Hilton* and *Foster*, the stay concerned whether criminal defendants should remain in custody pending an appeal by the State in a habeas corpus proceeding. *Hilton*, 481 U.S. at 772-73; *Foster*, 515 U.S. at 1301-03. This is not a case involving a habeas corpus proceeding and whether a criminal defendant should be released from custody during an appeal.

Moreover, in *Hilton*, the "substantial case on the merits" language appears in the following passage:

> Where the State establishes that it has a strong likelihood of success on appeal, **or where, failing that, it can nonetheless demonstrate a substantial case on the merits**, continued custody is permissible if the second and fourth factors in the traditional stay analysis militate against release. Where the State's showing on the merits falls below this level, the preference for release should control.

*Id.* at 778 (internal citations omitted) (emphasis added). Thus, in the context of a habeas corpus proceeding that involves the potential release of a criminal defendant pending an appeal, the Supreme Court has recognized that the State may still be able

5

to obtain a stay in that situation by demonstrating that it has a "substantial case on the merits." In other words, and by adding in the "substantial case on the merits" factor, the State arguably has an easier standard to meet to prevent the release of a criminal defendant pending an appeal.

Indeed, there is a rationale for that approach in a habeas corpus proceeding. For instance,

> a state habeas petitioner has been adjudged guilty beyond a reasonable doubt by a judge or jury, and this adjudication of guilt has been upheld by the appellate courts of the State. Although the decision of a district court granting habeas relief will have held that the judgment of conviction is constitutionally infirm, that determination itself may be overturned on appeal before the State must retry the petitioner.

*Id.* at 779. Thus, before determining whether to release from custody a previously convicted criminal defendant, the Supreme Court gives the State more leeway to obtain a stay of that release pending an appeal.

B.P.J.'s case, however, is not a habeas corpus proceeding, and does not involve the types of issues that arise in a habeas corpus proceeding. As a result, it is not proper to add in the "substantial case on the merits" standard to the analysis in determining whether to grant a stay in this case.

### C. The Motion Should Be Denied Because All Four Of The *Nken* Factors Support Denying The Motion.

As discussed above, there are four factors that the Court must consider

6

when ruling on a motion to stay. *Nken*, 556 U.S. at 426. Moreover, as the Supreme

Court further recognized in *Nken*,

> [a] stay is an "intrusion into the ordinary processes of administration and judicial review," *Virginia Petroleum Jobbers Assn. v. FPC*, 259 F.2d 921, 925 (C.A.D.C.1958) (per curiam), and accordingly "is not a matter of right, even if irreparable injury might otherwise result to the appellant," *Virginian R. Co. v. United States*, 272 U.S. 658, 672, 47 S.Ct. 222, 71 L.Ed. 463 (1926). The parties and the public, while entitled to both careful review and a meaningful decision, are also generally entitled to the prompt execution of orders that the legislature has made final.

*Nken*, 556 U.S. at 427.

Furthermore, "when a party seeking a stay makes application to an

appellate judge following the denial of a similar motion by a trial judge, the burden

of persuasion on the moving party **is substantially greater than it was before the**

**trial judge**." *Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970) (emphasis added).

As shown below, B.P.J. cannot meet this "substantially greater" burden.

### 1. B.P.J. Will Not Likely Succeed On The Merits Of Her Appeal.

As the District Court found in denying B.P.J.'s motion for summary

judgment and in granting summary judgment for the County Board and the other

Appellees, the Act does not violate the Equal Protection Clause of the United States

Constitution and does not violate Title IX.

7

16014445

### a. B.P.J. is not likely to succeed on her Equal Protection Clause claim.

"The Equal Protection Clause of the Fourteenth Amendment provides that '[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws. It is 'essentially a direction that all persons similarly situated should be treated alike.'" *Grimm v. Gloucester County Sch. Bd*., 972 F.3d 586, 606 (4th Cir. 2020), as amended (Aug. 28, 2020) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985)). Equal Protection Clause challenges based on sex and transgender status are subject to intermediate scrutiny. *See H.B. Rowe Co. v. Tippett*, 615 F.3d 233, 242 (4th Cir. 2010); *Grimm*, 972 F.3d at 608. Under intermediate or heightened scrutiny, the challenged classification must serve an important government purpose, and the means employed must be substantially related to that purpose. *U.S. v. Virginia*, 518 U.S. 515, 524, 532-33 (1996). Moreover, "'legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality.'" *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (quoting *McGowan v. Maryland,* 366 U.S. 420, 425–26 (1961)).

In granting summary judgment for the County Board and other Appellees, the District Court properly applied the intermediate scrutiny analysis to B.P.J.'s Equal Protection Clause claim (A-273 to A-281). With regard to the first intermediate scrutiny factor, the District Court found that separating student athletes

8

16014445

based on their sex served "an important interest in providing equal athletic opportunities for female students" (A-275). Indeed, even B.P.J. agreed that this was an important interest for the State (*Id.*).

In addressing the second intermediate scrutiny factor, the District Court correctly found that the State's decision to exclude students from sports teams based on "biological sex" was substantially related to the State's important interest in providing equal athletic opportunities for female athletes. While B.P.J. challenges the State's decision to define "biological sex" in terms of reproductive biology and genetics at birth, the District Court found that, as a general principle and on average, "males outperform females athletically because of inherent physical differences between the sexes" (A-278). Indeed, the District Court noted that B.P.J. had conceded "that circulating testosterone in males creates a biological differences in athletic performance" (*Id.*).

In fact, the evidence developed during discovery showed that biological males are, on average, bigger, stronger, and faster than biological females. ("Defendants Harrison County Board of Education and Dora Stutler's Memorandum of Law in Support of Their Motion for Summary Judgment" (CM/ECF Doc. 281), at 23-25). Because of the physiological differences between males and females, males at any level, in general, have an athletic advantage over females who are equally aged, gifted or trained. This athletic advantage for males leads to unfairness

9

for females when males are allowed to compete against females in sports. In prohibiting males from playing on female sports teams or competing in female sports, the Act is substantially related to the State's important government interest of providing equal athletic opportunities for females and allowing females to play sports and compete in a fair environment.

While it is undoubtedly true that not every biological male is larger, stronger, and faster than every biological female, that fact does not matter here. Under intermediate scrutiny, the challenged classification need not be unrealistically perfectly related to the government's goals. Instead, the Act only needs to be "substantially" related to its goals. Applying this correct scrutiny, courts routinely accept that a classification that relies on some degree of generality can still be "substantially" related to its end. Thus, a classification based on average differences can easily withstand intermediate scrutiny. *See, e.g.*, *Clark, By and Through Clark v. Arizona Interscholastic Ass'n*, 695 F.2d 1126, 1131 (9th Cir. 1982) ("The record makes clear that due to average physiological differences, males would displace females to a substantial extent if they were allowed to compete for positions on the volleyball team. . . . [T]he Supreme Court allows for these average real differences between the sexes to be recognized [and] . . . gender [may] be used as a proxy in this sense if it is an accurate proxy.").

While B.P.J. argues in her motion to stay that the District Court failed

10

to analyze her as-applied claim by considering that she was receiving puberty-delaying medication and will not go through endogenous puberty, the District Court explained in its denial of B.P.J.'s motion to stay that if it had taken B.P.J.'s individual gender and sex characteristics into account, the District Court "would have been applying strict scrutiny's narrow tailoring requirement" (A-341). In other words, instead of determining whether the Act was "substantially" related to its purpose, as required under intermediate scrutiny, the District Court found that it would have to analyze B.P.J.'s individual characteristics to determine whether the Act met its purpose. Such an analysis would require a more fact specific, detailed analysis which is more akin to the "narrowly tailored" requirement that exists under the strict scrutiny analysis. For laws that address quasi-suspect classes, like individuals who are transgender, intermediate scrutiny, not strict scrutiny, is the proper standard that the Act needs to meet to be constitutional under the Equal Protection Clause. *Grimm*, 972 F.3d at 610.

While B.P.J. argues that the Court in *Grimm* focused on the constitutionality of the bathroom policy as applied to Grimm's particular circumstances, B.P.J.'s case would involve a significantly more factual and detailed analysis. For instance, in determining whether the Act met its interest of providing equal athletic opportunities for females as applied only to B.P.J., the Court would have to analyze such issues as when B.P.J. started endogenous puberty; when she

11

started taking puberty-delaying medications; whether those puberty-delaying medications worked; whether the puberty-delaying medications impacted her athletic ability; how is B.P.J. performing athletically compared to other female athletes; whether anyone has been displaced due to B.P.J.'s participation on the team or in events; and what happens if she stops taking those puberty-delaying medications. By contrast, in *Grimm*, the issue concerned whether a transgender male student could use a bathroom based on his gender identity. There is no similar detailed factual analysis the Court was required to perform in analyzing Grimm's individual situation.

Thus, as the District Court found, requiring the Act to undergo such a detailed analysis in reviewing B.P.J.'s unique, individual circumstances would be akin to requiring the Act to survive strict scrutiny's narrow tailoring requirement, *i.e.*, is the Act narrowly tailored to meet its purpose based solely upon B.P.J.'s specific and individual circumstances. Intermediate scrutiny, however, just requires that the Act satisfy the substantially related standard, which is a lower and less burdensome standard than strict scrutiny.

Moreover, while B.P.J. asserts that she is making an as-applied challenge to the Act based upon her individual circumstances, this Court has noted that for as-applied claims under intermediate scrutiny, this Court does "not consider any individual characteristics of the person raising the as-applied challenge but

16014445

focuse[s] entirely on the statute itself and the evidence addressing statutory purpose and fit." *Harley v. Wilkinson*, 988 F.3d 766, 769 (4th Cir. 2021) (abrogated on other grounds related to Second Amendment claims).

Furthermore, if the Act was only unconstitutional as applied to B.P.J. due to her individual circumstances, it would create an unworkable result because the County Board would have no clear standard for how to apply the Act going forward. For instance, would the County Board need to obtain medical records from any future transgender females who wanted to participate on a female team to determine if, or when, that athlete started taking puberty-delaying medications? Similarly, before allowing her on a team, would the County Board need to examine a transgender female athlete's performance to determine whether she would unfairly displace other female athletes either by displacing them from a spot on the team or by displacing other female athletes during a competition?

Ultimately, this case is about more than B.P.J. and whether she creates the risks the Act seeks to prevent. It is about the fairness to and safety of any number of biological females who, absent the Act, may have to compete against and engage in athletic competition (including contact sports) with and against biological males. It is of inadequate constitutional significance that any particular student has not yet gone through puberty and thus not yet gained all or even any of the differences in physical characteristics that medical intervention either can or cannot equalize. A

13

perfect, or even best possible, fit between a government's chosen means (*i.e.*, the classification) and its important goals is not what *intermediate* scrutiny demands. Intermediate scrutiny tolerates such imperfections in classifications. *U.S. v. Mahin*, 668 F.3d 119, 127–28 (4th Cir. 2012) ("intermediate scrutiny has never been held to require a perfect end-means fit"). For these reasons, B.P.J. is unlikely to succeed on the merits of her Equal Protection Clause claim.[3]

### b. B.P.J. is not likely to succeed on her Title IX claim.

To succeed on a Title IX claim, a plaintiff must prove "(1) that [the plaintiff] was excluded from participation in an education program 'on the basis of sex'; (2) that the educational institution was receiving federal financial assistance at the time; and (3) that ***improper*** discrimination caused [the plaintiff] harm." *Grimm*, 972 F.3d at 616 (citation omitted; emphasis added). Not all discrimination is

---

[3] While B.P.J.'s motion focuses on her as-applied challenge to the Act, B.P.J. also brought a facial challenge to the Act (Am. Compl., CM/ECF 64, at 21-22, 24 ¶¶ 97-98, 104-108, A-C). Therefore, it is important to consider that aspect when determining the likelihood of her success on the merits. Moreover, even with her as-applied challenge, B.P.J. will be seeking a permanent injunction that allows her to play sports in West Virginia throughout her scholastic career. B.P.J.'s own individual circumstances, however, may change over time in a way that cannot be predicted with accuracy at this time, and which may impact her as-applied challenge. For instance, B.P.J. will grow older, she will get taller, and she may eventually go through some type of puberty. Moreover, she may decide to stop or alter her puberty-delaying treatment plan, or her circumstances may force her to do so, and her circulating testosterone level may rise. As a result, while B.P.J. is currently a twelve-year-old middle school student, no one can predict if her situation will change next year or several years from now.

16014445

"improper," and B.P.J. cannot show that the Act results in "improper" discrimination for purposes of Title IX.   Indeed, Title IX regulations allow for certain types of discrimination, including by permitting sex-separated sports teams. 34 C.F.R. § 106.41(b).

For instance, Title IX regulations permit a recipient to "operate or sponsor separate [athletic] teams for members of each sex where selection for such teams is based upon competitive skill or the activity involved is a contact sport." *Id.* The regulations also require recipients to "provide equal athletic opportunity for members of both sexes," including by considering whether the "levels of competition effectively accommodate the interests and abilities of members of both sexes." 34 C.F.R. § 106.41(c).  Provisions such as those contained in the Title IX regulations are important to promote sex equality. *See, e.g.*, *Cohen v. Brown Univ.*, 991 F.2d 888, 897 (1st Cir. 1993) ("Equal opportunity to participate lies at the core of Title IX's purpose."); *O'Connor v. Bd. of Ed. of Sch. Dist. No. 23*, 645 F.2d 578, 582 (7th Cir. 1981) ("Title IX aims to provide equal opportunity in educational programs" and permits "separate-sex teams and . . . exclusion of girls from" certain boys' teams).

The Act similarly promotes sex equality in sports by (a) drawing a line on the basis of "biological" sex, that is, "an individual's physical form as a male or female based solely on the individual's reproductive biology and genetics at birth,"

15

and (b) permitting only "biological females" to participate on "[a]thletic teams or sports designated for females . . . where selection for such teams is based upon competitive skill or the activity involved is a contact sport." W. Va. Code § 18-2-25d. The line that the Act draws similarly situates all "biological" males, regardless of gender identity, and all "biological" males are treated the same. That is, all such similarly situated individuals are prohibited from participating on athletic teams or sports designated for females. By this means, the Act provides female athletes with an equal playing field in terms of both competition/opportunity and safety. It, therefore, follows that the Act is lawful under Title IX because it promotes Title IX's purpose of promoting sex equality in athletics.

Significantly, the analysis in *Grimm* is not dispositive here because the *Grimm* Court did not address athletics. Whereas transgender students may use restrooms corresponding with their gender identity without imposing the dangers of decreased opportunities for, and compromised safety of, cisgender females, these concerns are present regarding athletic participation. It is these concerns that make the Act lawful under Title IX, which permits sex-separated teams and promotes sex equality, because sex-related physical differences make a difference in contact sports and on teams involving competitive skill.

For instance, competing with biological males may cause girls to lose out on various opportunities, such as opportunities to start for a team, to play for a

16

team, or to even make a team, as well as opportunities for scholarships and an opportunity to win. Additionally, competing against biological males in contact sports may cause girls to suffer more physical injuries. Because the Title IX regulations recognize, and allow for, a Title IX recipient to sponsor or operate separate athletic teams based on sex "where selection for such teams is based upon competitive skill or the activity involved is a contact sport[,]" and because the regulations require recipients to "provide equal athletic opportunity for members of both sexes," it does not violate Title IX to discriminate between males and females in the context of sports. 34 C.F.R. § 106.41(b) and (c).

Thus, sex-separated sports are lawful and permissible under Title IX. Moreover, in compliance with Title IX, the Act in question defines "male" and "female" in a way intended to promote the goal of sex equality in athletics. Furthermore, and using the same language used in the Title IX regulations, the Act separates sports teams based on sex "where selection for such teams is based upon competitive skill or the activity involved is a contact sport." W. Va. Code § 18-2-25d(c)(2); 34 C.F.R. § 106.41(b). For these reasons, B.P.J. is not likely to succeed on the merits of her Title IX claim.

## 2. B.P.J. Will Not Be Irreparably Injured Absent A Stay.

While she would be required to participate on one or more teams designated for both sexes and/or for biological males, B.P.J. still has the opportunity

16014445

to participate on a school sports team.  For instance, she may continue to try out for and participate if selected on her school's cross country and track teams, which has both male and female teams.

Moreover, not every student in middle school makes a school sports team.  For many middle school sports, and due to space limitations, there are tryouts, and only those who perform the best in tryouts are selected to participate on the team. Thus, no middle school student has an automatic right to play any school sport that he or she wants to play.[4]  Therefore, school sports, by their very nature, are exclusionary and result in hurt feelings when a student unfortunately does not make a team.  Those circumstances, however, do not justify finding that the student has been irreparably injured.  While B.P.J. only wants to participate on the girls' team because she identifies as a girl, she still has the opportunity to try out for and participate in a sport.  The fact that it may not be the specific team that she wants to play for based on her gender identity does not mean that she will be irreparably harmed if she cannot try out for that specific team.  The opportunity to participate in school sports still exists, and thus, she will not suffer irreparable injury if the stay is denied.

---

[4] Indeed, the track team for the middle school where B.P.J. attends did not take every student who tried out for the team last season when B.P.J. made the team.  Therefore, if a stay is granted, and if B.P.J. makes the girls' track team, there may be one female student who does not make the track team because of B.P.J.'s participation on the team.

16014445

### 3.    The County Board Would Be Harmed If A Stay Is Entered, And A Stay Would Not Serve The Public Interest.

Based on the District Court's decision to uphold the Act, the County Board is required to follow the provisions of the Act, and would be subject to liability under the Act, including actual damages and attorneys' fees, if it did not apply the Act to all other students. W. Va. Code § 18-2-25d(d). If the preliminary injunction is restored with a stay, the County Board would be in a nearly impossible position, as it would have to resume making an exception for one student while being unable to do so for any other student who may request an exception. Thus, if another transgender female wanted to try out for a girls' sports team, the County Board and the school would be required to prohibit her from doing so. This creates harm to the County Board because it requires the County Board to treat students differently based upon their transgender status or biology, *i.e.*, B.P.J. would be allowed to try out for her chosen team while all other transgender females and biological males would be prohibited from doing so.

The public interest mirrors the County Board's interest, in that the public interest is best served when the same law is applied in the same way to all students – here, specifically, when the County Board follows the Act in the same way with regard to all of its students.

16014445

### 4.    The Equities Do Not Strongly Favor A Stay Pending Appeal.

If a stay is granted, it would create significant inequities.  For instance, it would allow B.P.J., and only B.P.J., to participate as a transgender female on a girls' school sports team.  Any other transgender female in the State of West Virginia who wanted to participate on a girls' school sports team would be prohibited from doing so.  There is no valid justification to support the creation of this inequitable situation.

Moreover, the Act represents the West Virginia Legislature's judgment about the harms of allowing biological males to compete in female sports.  In assessing those harms, the legislature chose to protect fair play for biological females at all public schools at the middle school, high school, and collegiate level.  In other words, the legislature chose to protect biological females no matter whether they were participating at a middle school county track meet or a collegiate conference championship.

The District Court has upheld the Act, and the West Virginia Legislature's purpose in enacting the Act.  So that the purpose and policy behind an Act, which has already been deemed constitutional, remains in place, the more equitable result would be to allow the Act to remain in place for all individuals while the Court reviews the merits of the District Court's decision.  Otherwise, it would

20

create an inequitable situation where a constitutionally valid Act remains in place for everyone except B.P.J.

### III.  <u>CONCLUSION</u>

For the foregoing reasons, B.P.J. cannot meet her burden to obtain a stay pending the appeal of this action.  Thus, the Harrison County Board of Education and County Superintendent Dora Stutler respectively request that the Court deny B.P.J.'s motion for a stay.

Dated:  February 15, 2023.

STEPTOE & JOHNSON PLLC
    Of Counsel

/s/  *Susan L. Deniker*
Susan L. Deniker   (WV Bar ID #7992)
400 White Oaks Boulevard
Bridgeport WV  26330-4500
Phone:  304-933-8154
Fax:      304-933-8747
Email:  susan.deniker@steptoe-johnson.com

*Counsel for Harrison County Board of Education and Dora Stutler, Defendants-Appellees*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rules of Appellate Procedure 27(d)(2)(A) and 32(g), I certify that "Appellees Harrison County Board of Education and Dora Stutler's Response to Appellant B.P.J.'s Motion for Stay Pending Appeal" complies with applicable type-volume and length limitations because this response contains 5,044 words, excluding the items exempted by Federal Rules of Appellate Procedure 32(f).

"Appellees Harrison County Board of Education and Dora Stutler's Response to Appellant B.P.J.'s Motion for Stay Pending Appeal" also complies with the typeface and typestyle requirements of Fed. R. App. P. 32(a)(4)-(6) because this response has been prepared in a proportionally space typeface using Microsoft Word for Microsoft 365 MSO in 14-point Times New Roman font.

Dated:  February 15, 2023.

STEPTOE & JOHNSON PLLC
Of Counsel

/s/  Susan L. Deniker
Susan L. Deniker   (WV Bar ID #7992)
400 White Oaks Boulevard
Bridgeport WV  26330-4500
Phone:  304-933-8154
Fax:      304-933-8747
Email:  susan.deniker@steptoe-johnson.com

*Counsel for Harrison County Board of Education and Dora Stutler, Defendants-Appellees*

22

16014445

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of February, 2023, I electronically

filed the foregoing **"Appellees Harrison County Board of Education and Dora**

**Stutler's Response to Appellant B.P.J.'s Motion for Stay Pending Appeal"** with

the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit

by using the CM/ECF system, which will accomplish service on counsel for all

parties through the Court's electronic filing system.


STEPTOE & JOHNSON PLLC
    Of Counsel

*/s/  Susan L. Deniker*
Susan L. Deniker   (WV Bar ID #7992)
400 White Oaks Boulevard
Bridgeport WV  26330-4500
Phone:  304-933-8154
Fax:     304-933-8747
Email:  susan.deniker@steptoe-johnson.com

*Counsel for Harrison County Board of Education and Dora Stutler, Defendants-Appellees*

23

16014445