# 23-1078(L)

## United States Court of Appeals for the Fourth Circuit

B.P.J., by her next friend and mother; HEATHER JACKSON,

*Plaintiffs-Appellants*,

v.

WEST VIRGINIA STATE BOARD OF EDUCATION; HARRISON COUNTY BOARD OF EDUCATION; WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION; W. CLAYTON BURCH, in his official capacity as State Superintendent; DORA STUTLER, in her official capacity as Harrison County Superintendent,

*Defendants-Appellees*,

THE STATE OF WEST VIRGINIA; LAINEY ARMISTEAD,

*Intervenors-Appellees*.

On Appeal from the United States District Court
for the Southern District of West Virginia
No. 2:21-cv-00316

**BRIEF FOR STATES OF NEW YORK, HAWAIʻI, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, ILLINOIS, MAINE, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEW JERSEY, OREGON, RHODE ISLAND, VERMONT, AND WASHINGTON, AND THE DISTRICT OF COLUMBIA AS AMICI CURIAE IN SUPPORT OF APPELLANTS**

ANNE E. LOPEZ
  *Attorney General*
  *State of Hawaiʻi*
425 Queen Street
Honolulu, HI 96813
(808) 586-1360

LETITIA JAMES
  *Attorney General*
  *State of New York*
28 Liberty Street
New York, New York 10005
(212) 416-8028

*(Counsel listing continues on signature pages.)*

Dated: April 3, 2023

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................ii

INTERESTS OF THE AMICI STATES .................................................. 1

ARGUMENT ........................................................................................ 4

POINT I

PROTECTING TRANSGENDER PEOPLE FROM DISCRIMINATION
CONFERS WIDE SOCIETAL BENEFITS WITHOUT REDUCING
OPPORTUNITIES FOR OTHERS ............................................................ 4

    A.   Transgender Youth Face Pervasive and Harmful
       Discrimination That Causes Them Serious Health
       and Academic Harms. ................................................... 7

    B.   The Amici States' Experiences Confirm That
       Protecting Transgender People from Discrimination
       Yields Broad Benefits. ................................................ 12

POINT II

TITLE IX AND THE EQUAL PROTECTION CLAUSE PROHIBIT THE
GENDER-IDENTITY DISCRIMINATION IN THIS CASE ............................ 17

CONCLUSION ................................................................................. 28

i

# TABLE OF AUTHORITIES

**Cases**   **Page(s)**

*Adams ex rel. Kasper v. School Bd. of St. Johns Cnty.*,
57 F.4th 791 (11th Cir. 2022) ............................................................. 21

*B.P.J. v. West Virginia State Bd. of Educ.*,
No. 21-cv-316, 2023 WL 111875 (S.D. W. Va. Jan. 5, 2023) ........ 19, 25

*Bostock v. Clayton Cnty.*,
140 S. Ct. 1731 (2020) ................................................................ 7, 17-18

*Brown v. Board of Educ.*,
347 U.S. 483 (1954) ............................................................................ 12

*City of Cleburne v. Cleburne Living Ctr.*,
473 U.S. 432 (1985) ............................................................................ 26

*Dodds v. United States Dep't of Educ.*,
845 F.3d 217 (6th Cir. 2016) .............................................................. 21

*Doe ex rel. Doe v. Boyertown Area Sch. Dist.*,
897 F.3d 518 (3d Cir. 2018) ............................................................... 21

*Grimm v. Gloucester Cnty. Sch. Bd.*,
972 F.3d 586 (4th Cir. 2020) ......................................... 17, 19, 23, 25

*Nguyen v. Immigration & Naturalization Serv.*,
533 U.S. 53 (2001) .............................................................................. 26

*Parents for Privacy v. Barr*,
949 F.3d 1210 (9th Cir. 2020) ............................................................ 21

*Soule ex rel. Stanescu v. Connecticut Ass'n of Schs.*,
57 F.4th 43 (2d Cir. 2022) .................................................................. 21

*Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1
Bd. of Educ.*,
858 F.3d 1034 (7th Cir. 2017) ............................................................ 21

**Laws**                                                                **Page(s)**

*Federal*

20 U.S.C. § 1681 ......................................................................... 17

*California*

Cal. Civ. Code § 51 ....................................................................... 5

Cal. Educ. Code
  § 220 ........................................................................................ 5
  § 221.5 ................................................................................ 5, 13

Cal. Gov't Code
  § 12926 ..................................................................................... 5
  § 12940 ..................................................................................... 5
  § 12949 ..................................................................................... 5
  § 12955 ..................................................................................... 5

Cal. Penal Code
  § 422.55 .................................................................................... 5
  § 422.56 .................................................................................... 5

*Colorado*

Colo. Rev. Stat.
  § 24-34-301 .............................................................................. 5
  § 24-34-402 .............................................................................. 5
  § 24-34-502 .............................................................................. 5
  § 24-34-601 .............................................................................. 5

*Connecticut*

Conn. Gen. Stat.
  § 10-15c ............................................................................. 5, 13
  § 46a-51 ................................................................................... 5
  § 46a-60 ................................................................................... 5
  § 46a-64 ................................................................................... 5
  § 46a-64c ................................................................................. 5

iii

**Laws**                                                      **Page(s)**

*Delaware*

Del. Code Ann. tit. 6
    § 4501 ................................................................. 5
    § 4603 ................................................................. 5

Del. Code Ann. tit. 19, § 711 .................................... 5

*Hawaiʻi*

Haw. Rev. Stat.
    § 302A-461 ........................................................ 5
    § 368D-1 ............................................................ 5
    § 489-2 .............................................................. 5
    § 489-3 .............................................................. 5
    § 515-2 .............................................................. 5
    § 515-3 .............................................................. 5

*Illinois*

775 Ill. Comp. Stat.
    5/1-102 .............................................................. 5
    5/1-103 .............................................................. 5

*Iowa*

Iowa Code
    § 216.2 .............................................................. 5
    § 216.6 .............................................................. 5
    § 216.7 .............................................................. 5
    § 216.8 .............................................................. 5
    § 216.9 .............................................................. 5

| **Laws** | **Page(s)** |
|---|---|

*Maine*

Me. Rev. Stat. Ann. tit. 5
- § 4553 ........................................................................5
- § 4571 ........................................................................5
- § 4581 ........................................................................5
- § 4591 ........................................................................5
- § 4601 ........................................................................5

*Maryland*

Md. Code Ann., Educ. § 26-704 ..................................5

Md. Code Ann., State Gov't
- § 20-304 ....................................................................5
- § 20-606 ....................................................................5
- § 20-705 ....................................................................5

*Massachusetts*

Mass. Gen. Laws ch. 4, § 7 ..........................................5

Mass. Gen. Laws ch. 76, § 5 ..................................5, 13

Mass. Gen. Laws ch. 151B, § 4....................................5

Mass. Gen. Laws ch. 272
- § 92A..........................................................................5
- § 98 ............................................................................5

*Minnesota*

Minn. Stat.
- § 363A.03....................................................................5
- § 363A.08....................................................................5
- § 363A.09....................................................................5
- § 363A.11....................................................................5
- § 363A.13....................................................................5

**Laws** **Page(s)**

*Nevada*

Nev. Rev. Stat.
§ 118.075 ................................................................. 6
§ 118.100 ................................................................. 6
§ 613.310 ................................................................. 6
§ 613.330 ................................................................. 6
§ 651.050 ................................................................. 6
§ 651.070 ................................................................. 6

*New Hampshire*

N.H. Rev. Stat. Ann.
§ 354-A:2 ................................................................. 6
§ 354-A:6 ................................................................. 6
§ 354-A:8 ................................................................. 6
§ 354-A:16 ............................................................... 6
§ 354-A:27 ............................................................... 6

*New Jersey*

N.J. Stat. Ann.
§ 10:5-5 .................................................................. 6
§ 10:5-12 ................................................................ 6
§ 18A:36-41 ............................................................ 6

*New Mexico*

N.M. Stat. Ann.
§ 28-1-2 ................................................................. 6
§ 28-1-7 ................................................................. 6

*New York*

N.Y. Educ. Law
§ 11 ..................................................................... 14
§ 12 ..................................................................... 14

**Laws**                                                                 **Page(s)**

*New York (cont'd)*

N.Y. Exec. Law
§ 291 ...................................................................... 6
§ 296 ...................................................................... 6

*Oregon*

Or. Rev. Stat.
§ 174.100 ................................................................ 6
§ 659.850 ................................................................ 6
§ 659A.006 .............................................................. 6

*Rhode Island*

11 R.I. Gen. Laws § 11-24-2 ........................................ 6

28 R.I. Gen. Laws
§ 28-5-6 .................................................................. 6
§ 28-5-7 .................................................................. 6

34 R.I. Gen. Laws
§ 34-37-3 ................................................................ 6
§ 34-37-4 ................................................................ 6

*Utah*

Utah Code Ann.
§ 34A-5-106 ............................................................ 6
§ 57-21-5 ................................................................ 6

*Vermont*

Vt. Stat. Ann. tit. 1, § 144 .......................................... 6

Vt. Stat. Ann. tit. 9
§ 4502 .................................................................... 6
§ 4503 .................................................................... 6

Vt. Stat. Ann. tit. 21, § 495 ........................................ 6

**Laws**                                                                 **Page(s)**

*Washington*

Wash. Rev. Code Ann.

§ 28A.642.010 ................................................................ 6, 13

§ 49.60.030 ......................................................................... 6

§ 49.60.040 ......................................................................... 6

§ 49.60.180 ......................................................................... 6

§ 49.60.215 ......................................................................... 6

§ 49.60.222 ......................................................................... 6

*West Virginia*

W. Va. Code Ann. § 18-2-25d ............................... 18-19, 22, 25

*District of Columbia*

D.C. Code

§ 2-1401.02 ........................................................................ 6

§ 2-1402.11 ........................................................................ 6

§ 2-1402.21 ........................................................................ 6

§ 2-1402.31 ........................................................................ 6

§ 2-1402.41 .................................................................... 6, 13

§ 38-841.02 ...................................................................... 13

**Regulations & Rules**

28 C.F.R. § 54.450 ............................................................ 18

34 C.F.R. § 106.41 ............................................................ 18

14 Del. Admin. Code § 1024 ............................................ 23

603 Mass. Code Regs. 26.06 ............................................ 14

D.C. Mun. Regs. tit. 5-F, § 102.6 ...................................... 13

Fed. R. App. P. 29 ............................................................... 1

## Miscellaneous Authorities                                    Page(s)

Albuquerque Pub. Schs., *Non-Discrimination for Students: Gender Identity and Expression* (May 2016), https://tinyurl.com/y8hugxkt ............................................................ 24

Alison R. Snyder et al., *Health-Related Quality of Life Differs Between Adolescent Athletes and Adolescent Nonathletes*, 19 J. Sport Rehab. 237 (2010), https://tinyurl.com/5aje6hb2 ................. 14-15

American Psych. Ass'n, *Answers to Your Questions About Transgender People, Gender Identity, and Gender Expression* (3d ed. 2014), https://www.apa.org/topics/lgbtq/transgender.pdf .......... 4

American Psych. Ass'n, *Guidelines for Psychological Practice with Transgender and Gender Nonconforming People*, 70 Am. Psych. 832 (2015), https://www.apa.org/practice/guidelines/transgender.pdf ....... 4

April J. Ancheta et al., *The Impact of Positive School Climate on Suicidality and Mental Health Among LGBTQ Adolescents: A Systematic Review*, 37 J. Sch. Nursing 75 (2021), https://www.ncbi.nlm.nih.gov/pmc/articles/ PMC8142116/pdf/nihms-1699098.pdf ........................................... 10-11

Cady Stanton, *As 'Don't Say Gay' and Similar Bills Take Hold, LGBTQ Youths Feel They're 'Getting Crushed'*, USA Today (May 9, 2022), https://www.usatoday.com/story/news/ education/2022/05/09/dont-say-gay-lgbtq-youth- reaction/7398468001/ ........................................................... 11

Caitlin M. Clark & Joseph G. Kosciw, *Engaged or Excluded: LGBTQ Youth's Participation in School Sports and Their Relationship to Psychological Well-Being*, 59 Psych. Schs. 95 (2022), https://onlinelibrary.wiley.com/doi/abs/10.1002/pits.22500 ...... 16

Caitlin M. Clark et al., GLSEN, *LGBTQ Students and School Sports Participation: Research Brief* (2021), https://tinyurl.com/yc2r7cac ............................................................ 16

California Interscholastic Fed'n, *Constitution & Bylaws 2022-23*, https://tinyurl.com/yaj2n3kb ........................................................ 22

| **Miscellaneous Authorities** | **Page(s)** |
|---|---|

Colorado High Sch. Activities Ass'n, *CHSAA Transgender Inclusion Bylaw & Policy*, https://tinyurl.com/4sr3em6k .................. 23

Division on C.R., N.J. Dep't of L. & Pub. Safety, *5 Things You Should Know About LGBTQ+ Student Rights in Schools* (June 15, 2022), https://www.njoag.gov/wp-content/uploads/2022/06/fact_LGBTQ-School-Students.pdf ............. 13

Ellis Barrera et al., *The Medical Implications of Banning Transgender Youth from Sport Participation*, 176 JAMA Pediatrics 223 (2022), https://tinyurl.com/zxzjfkx9 ........................... 15

Emily A. Greytak et al., GLSEN, *Harsh Realities: The Experiences of Transgender Youth in Our Nation's Schools* (2009), https://files.eric.ed.gov/fulltext/ED505687.pdf .................. 7, 11

Fresno Unified Sch. Dist., *Fresno Unified Admin. Regul. (AR) 5145.3: Nondiscrimination / Harassment* (Mar. 7, 2022), https://bp.fresnounified.org/wp-content/uploads/5145-3-AR-Nondiscrimination-Harassment-1.pdf ................................................ 22

GLSEN, *Improving School Climate for Transgender and Nonbinary Youth: Research Brief* (2021), https://www.glsen.org/sites/default/files/2021-11/GLSEN_Trans%26Nonbinary_ResearchBrief.pdf ......................... 7

Human Rts. Campaign, *Cities and Counties with Non-Discrimination Ordinances That Include Gender Identity*, https://tinyurl.com/y48f4o4u............................................................... 6

Human Rts. Campaign Found., *Human Rights Campaign Post-Election Survey of Youth* (2017), https://tinyurl.com/82kux3uk .......... 9

Jennifer R. Pharr et al., *Serial Mediation Analysis of the Association of Familiarity with Transgender Sports Bans and Suicidality Among Sexual and Gender Minority Adults in the United States*, 19 Int'l J. Env't Rsch. & Pub. Health, Aug. 2022, https://www.mdpi.com/1660-4601/19/17/10641 ............... 16

**Miscellaneous Authorities**  **Page(s)**

Jody L. Herman et al., Williams Inst., *How Many Adults and Youth Identify as Transgender in the United States?* (2022), https://williamsinstitute.law.ucla.edu/wp-content/uploads/Trans-Pop-Update-Jun-2022.pdf .............................. 4

Joseph G. Kosciw et al., GLSEN, *The 2021 National School Climate Survey: The Experiences of LGBTQ+ Youth in Our Nation's Schools* (2022), https://www.glsen.org/sites/default/files/2022-10/NSCS-2021-Full-Report.pdf..................................... 7-11

Judy Chiasson, *Success and Opportunity for Transgender Students*, HuffPost (updated Feb. 2, 2016), https://www.huffpost.com/entry/success-and-opportunity-for-transgender-students_b_3744830 ....................................... 24

Kansas Hum. Rts. Comm'n, *Kansas Human Rights Commission Concurs with the U.S. Supreme Court's* Bostock *Decision* (Aug. 21, 2020), https://tinyurl.com/y8hmwx54 ................................. 5

Kelly P. Troutman & Mikaela J. Dufur, *From High School Jocks to College Grads: Assessing the Long-Term Effects of High School Sport Participation on Females' Educational Attainment*, 38 Youth & Soc'y 443 (2007), http://jvlone.com/sportsdocs/womenHighSchooltoCollege2007.pdf ......................... 14-16

Kristina R. Olson et al., *Mental Health of Transgender Children Who Are Supported in Their Identities*, Pediatrics, Mar. 2016, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4771131/pdf/PEDS_20153223.pdf ........................................................ 12

Landon D. Hughes et al., *Pediatric Provider Perspectives on Laws and Policies Impacting Sports Participation for Transgender Youth*, 9 LGBT Health 247 (2022), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9271330/pdf/lgbt.2021.0392.pdf............................................................ 15

**Miscellaneous Authorities**                                    **Page(s)**

Maryland Pub. Secondary Schs. Athletic Ass'n, *MPSSAA Guidance for Participation of Transgender Youth in Interscholastic Athletics* (Aug. 2016), https://www.mpssaa.org/ assets/1/6/MPSSAA_Transgender_Guidance_revised_8.16.pdf ........ 23

Massachusetts Interscholastic Athletic Ass'n, *Rules and Regulations Governing Athletics: A Handbook for Principals and Athletic Directors*, https://miaa.net/wp-content/uploads/2022/04/MIAA-Handbook-21-23revised.pdf ............... 23

Michelle M. Johns et al., *Transgender Identity and Experiences of Violence Victimization, Substance Use, Suicide Risk, and Sexual Risk Behaviors Among High School Students — 19 States and Large Urban School Districts, 2017*, 68 Morbidity & Mortality Wkly. Rep. 67 (2019), https://www.ncbi.nlm.nih.gov/ pmc/articles/PMC6348759/pdf/mm6803a3.pdf ..................... 7

Minnesota Dep't of Educ., *A Toolkit for Ensuring Safe and Supportive Schools for Transgender and Gender Nonconforming Students* (Sept. 25, 2017), https://education.mn.gov/MDE/dse/safe/ ........................... 13

Minnesota State High Sch. League, *Official Handbook, 300.00: Administration of Student Eligibility Bylaws*, https://tinyurl.com/29yzv5mj ............... 23

Nevada Interscholastic Activities Ass'n, *NIAA Transgender Participation Position Statement and Policy* (Apr. 6, 2016), https://tinyurl.com/ydfp4cyz .................. 23

New Jersey Dep't of Educ., *Transgender Student Guidance for School Districts*, https://www.nj.gov/education/safety/sandp/ climate/docs/Guidance.pdf .................. 13

New Jersey State Interscholastic Athletic Ass'n, *NJSIAA & NJSCA Coaches Handbook: 2020-2021*, https://www.njsiaa.org/sites/default/files/documents/ 2020-10/coaches-handbook-2020-21.pdf ........................... 24

**Miscellaneous Authorities**                    **Page(s)**

New York State Educ. Dep't, *Guidance to School Districts for Creating a Safe and Supportive School Environment For Transgender and Gender Nonconforming Students* (July 2015), http://www.p12.nysed.gov/dignityact/documents/Transg_GNC GuidanceFINAL.pdf ........................................................................... 14

New York State Pub. High Sch. Athletic Ass'n, *NYSPHSAA Handbook* (Feb. 2023), https://tinyurl.com/2p84b9mu ...................... 23

Nhan L. Truong et al., GLSEN, *Erasure and Resilience: The Experiences of LGBTQ Students of Color* (2020), https://www.glsen.org/sites/default/files/2020-06/Erasure-and-Resilience-Black-2020.pdf ............................................................. 9

Office of Elementary & Secondary Educ., *Safe & Supportive Schools* (Feb. 15, 2023), https://oese.ed.gov/offices/office-of-formula-grants/safe-supportive-schools/ ..................................... 12, 16

Oregon Sch. Activities Ass'n, *2022-2023 Oregon Sch. Activities Association Handbook*, https://www.osaa.org/docs/handbooks/osaahandbook.pdf .............................................................. 23

Patrick McGreevy, *California Transgender Students Given Access to Opposite-Sex Programs*, L.A. Times (Aug. 12, 2013), https://tinyurl.com/yd76s7n4 ............................................................ 24

Rhode Island Interscholastic League, *Rules and Regulations, Article 3* (June 21, 2022), https://www.riil.org/page/3033 ................. 23

Richard Bailey, *Physical Education and Sport in Schools: A Review of Benefits and Outcomes*, 76 J. Sch. Health 397 (2006), https://tinyurl.com/ya9wodma ............................................... 15

Sandy E. James et al., Nat'l Ctr. for Transgender Equal., *The Report of the 2015 U.S. Transgender Survey* (2016), https://transequality.org/sites/default/files/docs/usts/USTS-Full-Report-Dec17.pdf ................................................................. 8, 10

**Miscellaneous Authorities**                                        **Page(s)**

Scott B. Greenspan et al., *LGBTQ+ Youth's Experiences
  and Engagement in Physical Activity: A Comprehensive
  Content Analysis*, 4 Adolescent Rsch. Rev. 169 (2019),
  https://shine.lab.uconn.edu/wp-content/uploads/sites/
  3321/2021/06/greenspan_et_al_2019.pdf ........................................... 15

State Bd. of Educ., Mich. Dep't of Educ., *State Board of
  Education Statement and Guidance on Safe and
  Supportive Learning Environments for Lesbian, Gay,
  Bisexual, Transgender, and Questioning (LGBTQ)
  Students* (Sept. 14, 2016), https://www.michigan.gov/
  documents/mde/SBEStatementonLGBTQYouth_534576_7.pdf ........ 13

The Trevor Project, *2022 National Survey on LGBTQ Youth
  Mental Health* (2022), https://www.thetrevorproject.org/
  survey-2022/assets/static/trevor01_2022survey_final.pdf ............. 9-10

University of Minn., *Equity and Access: Gender Identity,
  Gender Expression, Names and Pronouns*,
  https://policy.umn.edu/operations/genderequity ............................... 23

Washington Interscholastic Activities Ass'n,
  *WIAA Handbook 2022-23* (Dec. 6, 2022),
  http://wiaa.com/results/handbook/2022-23/FullHandbook.pdf .......... 23

Washington Off. of Superintendent of Pub. Instruction,
  *Gender-Inclusive Schools*, https://tinyurl.com/2ucshp86 ................... 13

What We Know Project, *What Does the Scholarly Research Say
  About the Effects of Discrimination on the Health of LGBT
  People?*, Cornell Univ. (2019), https://tinyurl.com/3jn7ymtb ............. 10

## INTERESTS OF THE AMICI STATES

In this case, plaintiff-appellant B.P.J., a twelve-year-old transgender girl, seeks an injunction against enforcement of West Virginia Code § 18-2-25d. That statute categorically bars transgender female students from participating in sex-segregated sports consistent with their gender identity. The district court erroneously granted summary judgment to defendants, concluding that § 18-2-25d does not violate B.P.J.'s rights under Title IX of the Education Amendments of 1972 or the Equal Protection Clause. The States of New York, Hawaiʻi, California, Colorado, Connecticut, Delaware, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, New Jersey, Oregon, Rhode Island, Vermont, and Washington, and the District of Columbia, file this brief as amici curiae in support of B.P.J. *See* Fed. R. App. P. 29(a)(2).

B.P.J. simply wants to participate on her school's girls' cross country and track teams with her friends. B.P.J. began expressing her gender identity at age three, and she has lived as a girl in both school and home since third grade. But absent injunctive relief, her school will not let her participate on those teams based on § 18-2-25d, which singles out transgender females like B.P.J. for disfavored treatment based solely on their

sex assigned at birth. The statute does not prohibit cisgender females, cisgender males, or transgender males from participating on single-sex teams consistent with their gender identity.

Amici file this brief to explain that in their experience, allowing transgender female students to participate in women's sports promotes inclusive school environments that benefit all, and does not compromise fairness or reduce opportunities for cisgender students.

Amici States strongly support the right of transgender people to live with dignity, be free from discrimination, and have equal access to education, government-sponsored opportunities, and other incidents of life, including student athletic programs. Discrimination and exclusion on the basis of one's transgender status cause tangible economic, educational, emotional, and health harms. To prevent these injuries, many of the amici States have adopted policies aimed at combatting discrimination against transgender people and facilitating inclusive environments. Amici submit this brief to describe their experiences with administering such policies—including policies permitting transgender students to participate in sex-segregated athletic programs on an equal basis with other students. As amici's experiences show, allowing transgender female students to parti-

cipate in women's sports does not deprive cisgender female students of the benefits of participating in athletic activities.

The amici States also share a strong interest in seeing that federal law is properly applied to protect transgender people from discrimination. This appeal does not challenge the authority of schools to offer single-sex athletic teams. Rather, this case challenges a statute that categorically excludes transgender girls from participating on athletic teams consistent with their gender identity based solely on their sex assigned at birth. West Virginia's law violates Title IX by denying B.P.J. and transgender girls like her access to the same athletic opportunities that other boys and girls have. Further, because the sole function of West Virginia's law is to exclude and stigmatize transgender girls like B.P.J., it violates equal protection under any level of scrutiny.

# ARGUMENT

## POINT I

### PROTECTING TRANSGENDER PEOPLE FROM DISCRIMINATION CONFERS WIDE SOCIETAL BENEFITS WITHOUT REDUCING OPPORTUNITIES FOR OTHERS

Over 1.6 million people in the United States—including approximately 300,000 youth between the ages of thirteen and seventeen—identify as transgender.[1] Transgender people have been part of cultures worldwide "from antiquity to the present day."[2] They contribute to our communities in myriad ways, including as students, teachers, essential workers, firefighters, police officers, lawyers, nurses, and doctors.

Unfortunately, transgender people often experience discrimination that limits their ability to realize their potential. To combat such discrimination, States began providing civil rights protections for transgender people nearly a quarter century ago. Today, at least twenty-two States

---

[1] Jody L. Herman et al., Williams Inst., *How Many Adults and Youth Identify as Transgender in the United States?* 1 (2022). (For authorities available online, full URLs appear in the table of authorities. All URLs were last visited on April 3, 2023.)

[2] American Psych. Ass'n (APA), *Answers to Your Questions About Transgender People, Gender Identity, and Gender Expression* 1 (3d ed. 2014); *see also* APA, *Guidelines for Psychological Practice with Transgender and Gender Nonconforming People*, 70 Am. Psych. 832, 834 (2015).

4

and the District of Columbia,[3] and at least 225 local governments,[4] offer

express protections against discrimination based on gender identity in

---

[3] **California**: Cal. Civ. Code § 51(b), (e)(5) (public accommodations); Cal. Educ. Code §§ 220 (education), 221.5(f) (education and school athletic participation); Cal. Gov't Code §§ 12926(o), (r)(2), 12940(a), 12949 (employment); *id.* § 12955 (housing); Cal. Penal Code §§ 422.55, 422.56(c) (hate crimes). **Colorado**: Colo. Rev. Stat. § 24-34-301(7) (definition); *id.* § 24-34-402 (employment); *id.* § 24-34-502 (housing); *id.* § 24-34-601 (public accommodations). **Connecticut**: Conn. Gen. Stat. § 10-15c (schools); *id.* § 46a-51(21) (definition); *id.* § 46a-60 (employment); *id.* § 46a-64 (public accommodations); *id.* § 46a-64c (housing). **Delaware**: Del. Code Ann. tit. 6, § 4501 (public accommodations); *id.* tit. 6, § 4603(b) (housing); *id.* tit. 19, § 711 (employment). **Hawai'i**: Haw. Rev. Stat. § 368D-1 (education); *id.* § 302A-461 (school athletics); *id.* § 489-2 (definition); *id.* § 489-3 (public accommodations); *id.* § 515-2 (definition); *id.* § 515-3 (housing). **Illinois**: 775 Ill. Comp. Stat. 5/1-102(A) (housing, employment, access to financial credit, public accommodations); *id.* 5/1-103(O-1) (definition). **Iowa**: Iowa Code § 216.2(10) (definition); *id.* § 216.6 (employment); *id.* § 216.7 (public accommodations); *id.* § 216.8 (housing); *id.* § 216.9 (education). **Kansas**: Kansas Hum. Rts. Comm'n, *Kansas Human Rights Commission Concurs with the U.S. Supreme Court's* Bostock *Decision* (Aug. 21, 2020) (advising that Kansas laws prohibiting discrimination based on "sex" in "employment, housing, and public accommodation" contexts "are inclusive of LGBTQ and all derivates of 'sex'"). **Maine**: Me. Rev. Stat. Ann. tit. 5, § 4553(9-C) (definition); *id.* § 4571 (employment); *id.* § 4581 (housing); *id.* § 4591 (public accommodations); *id.* § 4601 (education). **Maryland**: Md. Code Ann., State Gov't § 20-304 (public accommodations); *id.* § 20-606 (employment); *id.* § 20-705 (housing); Md. Code Ann., Educ. § 26-704 (schools). **Massachusetts**: Mass. Gen. Laws ch. 4, § 7, fifty-ninth (definition); *id.* ch. 76, § 5 (education); *id.* ch. 151B, § 4 (employment, housing, credit); *id.* ch. 272, §§ 92A, 98 (public accommodations) (as amended by Ch. 134, 2016 Mass. Acts). **Minnesota**: Minn. Stat. § 363A.03(44) (definition); *id.* § 363A.08 (employment); *id.* § 363A.09 (housing); *id.* § 363A.11 (public accommodations); *id.* § 363A.13

*(continued on the next page)*

(education). **Nevada**: Nev. Rev. Stat. §§ 118.075, 118.100 (housing); *id.* §§ 613.310(4), 613.330 (employment); *id.* §§ 651.050(2), 651.070 (public accommodations). **New Hampshire**: N.H. Rev. Stat. Ann. § 354-A:2(XIV-e) (definition); *id.* § 354-A:6 (employment); *id.* § 354-A:8 (housing); *id.* § 354-A:16 (public accommodations); *id.* § 354-A:27 (education). **New Jersey**: N.J. Stat. Ann. § 10:5-5(rr) (definition); *id.* § 10:5-12 (public accommodations, housing, employment); *id.* § 18A:36-41 (directing issuance of guidance to school districts permitting transgender students "to participate in gender-segregated school activities in accordance with the student's gender identity"). **New Mexico**: N.M. Stat. Ann. § 28-1-2(Q) (definition); *id.* § 28-1-7(A) (employment); *id.* § 28-1-7(F) (public accommodations); *id.* § 28-1-7(G) (housing). **New York**: N.Y. Exec. Law §§ 291, 296 (education, employment, public accommodations, housing). **Oregon**: Or. Rev. Stat. § 174.100(4) (definition); *id.* § 659.850 (education); *id.* § 659A.006 (employment, housing, public accommodations). **Rhode Island**: 11 R.I. Gen. Laws § 11-24-2 (public accommodations); 28 R.I. Gen. Laws §§ 28-5-6(11), 28-5-7 (employment); 34 R.I. Gen. Laws §§ 34-37-3(9), 34-37-4 (housing). **Utah**: Utah Code Ann. § 34A-5-106 (employment); *id.* § 57-21-5 (housing). **Vermont**: Vt. Stat. Ann. tit. 1, § 144 (definition); *id.* tit. 9, § 4502 (public accommodations); *id.* tit. 9, § 4503 (housing); *id.* tit. 21, § 495 (employment). **Washington**: Wash. Rev. Code Ann. § 28A.642.010 (education); *id.* § 49.60.030(1)(a)-(e) (employment, public accommodations, real estate transactions, credit transactions, and insurance transactions); *id.* § 49.60.040(27) (definition); *id.* § 49.60.180 (employment); *id.* § 49.60.215 (public accommodations); *id.* § 49.60.222 (housing). **District of Columbia**: D.C. Code § 2-1401.02(12A-i) (definition); *id.* § 2-1402.11 (employment); *id.* § 2-1402.21 (housing); *id.* § 2-1402.31 (public accommodations); *id.* § 2-1402.41 (education).

[4] Human Rts. Campaign, *Cities and Counties with Non-Discrimination Ordinances That Include Gender Identity* (current as of January 28, 2021).

areas such as education, housing, public accommodations, and employment.[5]

The experiences of amici States and other jurisdictions show that policies and practices that facilitate participation of transgender people—including policies permitting young people to participate in the single-sex sports teams consistent with their gender identity—promote inclusive communities, workplaces, and school environments that benefit all.

## A.     Transgender Youth Face Pervasive and Harmful Discrimination That Causes Them Serious Health and Academic Harms.

Transgender youth experience levels of discrimination, violence, and harassment that exceed those experienced by their cisgender peers.[6]

---

[5] The U.S. Supreme Court has confirmed that longstanding federal law similarly prohibits employment discrimination based on gender identity. *See Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1742-43 (2020).

[6] Joseph G. Kosciw et al., GLSEN, *The 2021 National School Climate Survey: The Experiences of LGBTQ+ Youth in Our Nation's Schools* xxvii, 84 (2022); *see also* GLSEN, *Improving School Climate for Transgender and Nonbinary Youth: Research Brief* 1 (2021); Emily A. Greytak et al., GLSEN, *Harsh Realities: The Experiences of Transgender Youth in Our Nation's Schools* xi (2009); Michelle M. Johns et al., *Transgender Identity and Experiences of Violence Victimization, Substance Use, Suicide Risk, and Sexual Risk Behaviors Among High School Students — 19 States and Large Urban School Districts, 2017*, 68 Morbidity & Mortality Wkly. Rep. 67, 67-70 (2019).

The 2015 U.S. Transgender Survey (USTS), the largest survey of transgender people to date, found:

- Over three quarters (77%) of respondents who were known or perceived as transgender in grades K-12 reported negative experiences at school, including being harassed or attacked;

- More than half of transgender students (54%) reported verbal harassment;

- Almost a quarter (24%) reported suffering a physical attack; and

- Approximately one in eight (13%) reported being sexually assaulted.[7]

A 2021 survey of LGBTQ students in grades six to twelve showed that 74% of transgender student respondents experienced in-person victimization at school because of their gender expression, and 42% experienced online victimization because of their gender expression.[8] More than a quarter of transgender respondents to a survey of LGBTQ teenagers

---

[7] Sandy E. James et al., Nat'l Ctr. for Transgender Equal., *The Report of the 2015 U.S. Transgender Survey* 131-35 (2016).

[8] Kosciw et al., GLSEN, *The 2021 National School Climate Survey*, *supra*, at 86-87.

aged thirteen to eighteen in December 2016 and January 2017 reported being bullied or harassed within the past thirty days.[9] And 71% of transgender and nonbinary youth in a 2022 survey reported being discriminated against because of their gender identity.[10] As a consequence of this discrimination, violence, and harassment, transgender students in grades six through twelve surveyed in 2021 reported feeling less connected to their schools, and had less of a sense of belonging, than other students.[11] Transgender youth of color, in particular, face unique difficulties as a result of their intersecting marginalized identities.[12]

Discrimination against transgender youth—including denying them the opportunity to participate in extracurricular activities consistent with their gender identity—can have serious health consequences. Research has demonstrated that discrimination against LGBTQ people—including

---

[9] Human Rts. Campaign Found., *Human Rights Campaign Post-Election Survey of Youth* 2, 8 (2017).

[10] The Trevor Project, *2022 National Survey on LGBTQ Youth Mental Health* 17 (2022).

[11] Kosciw et al., GLSEN, *The 2021 National School Climate Survey*, *supra*, at 88.

[12] Nhan L. Truong et al., GLSEN, *Erasure and Resilience: The Experiences of LGBTQ Students of Color* 3 (2020).

discriminatory policies and the denial of opportunities—"increases the risks of poor mental and physical health" for LGBTQ people.[13] For example, LGBTQ students who experienced discriminatory policies or practices in school were found to have lower self-esteem and higher levels of depression than students who had not encountered such discrimination.[14] Respondents to the 2015 USTS who reported negative experiences in grades K-12 were more likely than other respondents to be under serious psychological distress, to have experienced homelessness, and to have attempted suicide.[15] Transgender people attempt suicide at a rate nearly nine times that of the general population, and more than half of transgender and nonbinary youth in a 2022 mental health survey reported having seriously considered attempting suicide in the past twelve months.[16]

---

[13] What We Know Project, *What Does the Scholarly Research Say About the Effects of Discrimination on the Health of LGBT People?*, Cornell Univ. (2019).

[14] Kosciw et al., GLSEN, *The 2021 National School Climate Survey*, *supra*, at 43; *see also* April J. Ancheta et al., *The Impact of Positive School Climate on Suicidality and Mental Health Among LGBTQ Adolescents: A Systematic Review*, 37 J. Sch. Nursing 75, 76 (2021).

[15] James et al., Nat'l Ctr. for Transgender Equal., *2015 U.S. Transgender Survey*, *supra*, at 132.

[16] *See id.* at 114; The Trevor Project, *2022 National Survey on LGBTQ Youth Mental Health*, *supra*, at 5.

Positive school climates, on the other hand, have been linked to lower suicidality in LGBTQ youth.[17]

Discrimination in school settings also negatively affects educational outcomes. A 2021 survey showed that LGBTQ students who had experienced discriminatory policies and practices had lower levels of educational achievement, lower grade point averages, and lower levels of educational aspiration than other students.[18] Discriminatory school climates have also been found to exacerbate absenteeism. In the month before a 2021 survey, LGBTQ students who had experienced discrimination in their schools were almost three times as likely (43.3% versus 16.4%) to have missed school because they felt unsafe or uncomfortable.[19]

---

[17] Ancheta et al., *The Impact of Positive School Climate*, *supra*, at 80; *see also* Cady Stanton, *As 'Don't Say Gay' and Similar Bills Take Hold, LGBTQ Youths Feel They're 'Getting Crushed'*, USA Today (May 9, 2022) (noting that LGBTQ youths in affirming schools were nearly 40% less likely to attempt suicide than LGBTQ youths in non-affirming schools).

[18] Kosciw et al., GLSEN, *The 2021 National School Climate Survey*, *supra*, at 36-37; *see also* Greytak et al., GLSEN, *Harsh Realities*, *supra*, at 25, 27 fig. 15 (showing that more-frequently harassed transgender students had significantly lower grade point averages than other transgender students).

[19] Kosciw et al., GLSEN, *The 2021 National School Climate Survey*, *supra*, at 36.

**B.    The Amici States' Experiences Confirm That Protecting Transgender People from Discrimination Yields Broad Benefits.**

Policies that allow transgender students to access facilities and activities consistent with their gender identity create school climates that enhance students' well-being and facilitate their ability to learn.[20] For example, transgender students permitted to live consistently with their gender identity have mental health outcomes comparable to their cisgender peers.[21] These benefits redound to society as a whole because education advances not only the private interests of students, but also prepares them to contribute to society—socially, culturally, and economically. *See, e.g.*, *Brown v. Board of Educ.*, 347 U.S. 483, 493 (1954).

Several of the amici States have enacted laws or issued guidance to ensure equal opportunities for transgender students—including with

---

[20] *See, e.g.*, Br. of Amici Curiae Sch. Adm'rs from Thirty-One States & D.C. in Supp. of Resp't (Br. of Amici Curiae Sch. Adm'rs) at 3-4, *Gloucester Cnty. Sch. Bd. v. G.G. ex rel. Grimm*, 137 S. Ct. 1239 (2017) (No. 16-273), 2017 WL 930055; Office of Elementary & Secondary Educ., *Safe & Supportive Schools* (Feb. 15, 2023).

[21] *See* Kristina R. Olson et al., *Mental Health of Transgender Children Who Are Supported in Their Identities*, Pediatrics, Mar. 2016, at 5-7; Br. of Amici Curiae Sch. Adm'rs at 4, *Gloucester Cnty. Sch. Bd.*, 137 S. Ct. 1239 (No. 16-273), 2017 WL 930055.

regard to school activities and sports programs.[22] For example, both California and Massachusetts have long mandated that transgender students in K-12 schools be permitted to participate in school programs and activities—including sports—consistent with their gender identity. *See* Cal. Educ. Code § 221.5(f) (2013); Mass. Gen. Laws ch. 76, § 5 (2011);

---

[22] **Connecticut**: Conn. Gen. Stat. § 10-15c (prohibiting discrimination on basis of gender identity in student access to public school activities and programs). **Michigan**: State Bd. of Educ., Mich. Dep't of Educ., *State Board of Education Statement and Guidance on Safe and Supportive Learning Environments for Lesbian, Gay, Bisexual, Transgender, and Questioning (LGBTQ) Students* 5-6 (Sept. 14, 2016) (advising that K-12 students be permitted to participate in sports in accordance with their gender identity). **Minnesota**: Minnesota Dep't of Educ., *A Toolkit for Ensuring Safe and Supportive Schools for Transgender and Gender Nonconforming Students* 8 (Sept. 25, 2017) (same). **New Jersey**: New Jersey Dep't of Educ., *Transgender Student Guidance for School Districts* p. 6 (same, as to "gender-segregated classes or athletic activities, including intramural and interscholastic athletics"); Division on C.R., N.J. Dep't of L. & Pub. Safety, *5 Things You Should Know About LGBTQ+ Student Rights in Schools* (June 15, 2022) (under the New Jersey Law Against Discrimination "students are allowed to . . . participate in extracurricular activities, including intramural or interscholastic athletics and physical education, that best correspond to their gender identity and expression"). **Washington**: Wash. Rev. Code Ann. § 28A.642.010 (prohibiting discrimination based on gender identity in public schools); Washington Off. of Superintendent of Pub. Instruction, *Gender-Inclusive Schools* (transgender students in K-12 schools must be permitted to participate in "physical education and athletics" consistent with their gender identity). **District of Columbia**: D.C. Code §§ 2-1402.41, 38-841.02; D.C. Mun. Regs. tit. 5-F, § 102.6 (prohibiting gender identity discrimination by educational institutions generally and in the context of school athletics).

603 Mass. Code Regs. 26.06(5). Likewise, New York law expressly prohibits discrimination and harassment of students "on school property or at a school function" on the basis of gender identity in K-12 schools, N.Y. Educ. Law §§ 11(6), 12(1), and the New York State Education Department has made clear that transgender students in K-12 schools should be allowed to access school facilities and participate in activities, consistent with their gender identity, New York State Educ. Dep't, *Guidance to School Districts for Creating a Safe and Supportive School Environment For Transgender and Gender Nonconforming Students* 9-11 (July 2015).

Athletic participation has been linked to academic achievement and improved academic performance.[23] Participants in interscholastic sports "have higher grades, spend more time on homework, have higher educational aspirations, and are more likely to attend college than are their counterparts."[24] Young women who participate in high school athletics,

---

[23] Alison R. Snyder et al., *Health-Related Quality of Life Differs Between Adolescent Athletes and Adolescent Nonathletes*, 19 J. Sport Rehab. 237, 238 (2010); Kelly P. Troutman & Mikaela J. Dufur, *From High School Jocks to College Grads: Assessing the Long-Term Effects of High School Sport Participation on Females' Educational Attainment*, 38 Youth & Soc'y 443, 444 (2007).

[24] Troutman & Dufur, *From High School Jocks to College Grads*, *supra*, at 444.

in particular, are more likely on average to complete college.[25] Athletic participation has also been linked to "more successful outcomes in adulthood, such as employment."[26]

There are also many health benefits to sports participation. Regular physical activity "decreases the risk of developing diabetes, hypertension, cancer, and obesity, as well as cardiovascular and bone and joint diseases."[27] For youth, "[p]articipation in physical activity during childhood and adolescence has a positive impact on physical health throughout the life span."[28] Mental health benefits also result from sports participation,[29]

---

[25] *Id.* at 454.

[26] Scott B. Greenspan et al., *LGBTQ+ Youth's Experiences and Engagement in Physical Activity: A Comprehensive Content Analysis*, 4 Adolescent Rsch. Rev. 169, 170 (2019).

[27] Snyder et al., *Health-Related Quality of Life*, *supra*, at 237-38; *see also* Greenspan et al., *LGBTQ+ Youth's Experiences and Engagement in Physical Activity*, *supra*, at 170; Troutman & Dufur, *From High School Jocks to College Grads*, *supra*, at 444.

[28] Ellis Barrera et al., *The Medical Implications of Banning Transgender Youth from Sport Participation*, 176 JAMA Pediatrics 223, 223 (2022); *see, e.g.*, Landon D. Hughes et al., *Pediatric Provider Perspectives on Laws and Policies Impacting Sports Participation for Transgender Youth*, 9 LGBT Health 247, 251 (2022).

[29] Richard Bailey, *Physical Education and Sport in Schools: A Review of Benefits and Outcomes*, 76 J. Sch. Health 397, 398 (2006); Snyder et al., *Health-Related Quality of Life*, *supra*, at 238, 244.

including "improved emotion regulation, decreased hopelessness and suicidality, fewer depressive symptoms, and higher self-esteem."[30] For LGBTQ students in particular, sports participation has been linked to higher levels of self-esteem and lower levels of depression.[31]

All students, moreover, stand to benefit from an inclusive, supportive environment.[32] This is especially true of sports, given the importance of teamwork and cooperation in athletic competition.[33]

---

[30] Caitlin M. Clark & Joseph G. Kosciw, *Engaged or Excluded: LGBTQ Youth's Participation in School Sports and Their Relationship to Psychological Well-Being*, 59 Psych. Schs. 95, 96 (2022) (citations omitted); *see also* Jennifer R. Pharr et al., *Serial Mediation Analysis of the Association of Familiarity with Transgender Sports Bans and Suicidality Among Sexual and Gender Minority Adults in the United States*, 19 Int'l J. Env't Rsch. & Pub. Health, Aug. 2022, at 1, 11-12.

[31] Caitlin M. Clark et al., GLSEN, *LGBTQ Students and School Sports Participation: Research Brief* 8 (2021).

[32] *See* Br. of Amici Curiae Sch. Adm'rs at 2, *Gloucester Cnty. Sch. Bd.*, 137 S. Ct. 1239 (No. 16-273), 2017 WL 930055 ("[I]nclusive policies not only fully support the reality of transgender students' circumstances, but also foster a safer and more welcoming learning environment for all students."); *see also* Office of Elementary & Secondary Educ., *Safe & Supportive Schools*, *supra* ("Safe and supportive schools are critical to the well-being of the whole school community . . . .").

[33] *See* Troutman & Dufur, *From High School Jocks to College Grads*, *supra*, at 444-45.

## POINT II

### TITLE IX AND THE EQUAL PROTECTION CLAUSE PROHIBIT THE GENDER-IDENTITY DISCRIMINATION IN THIS CASE

Title IX broadly prohibits sex discrimination in schools receiving federal funding. Under Title IX, "[n]o person in the United States shall, *on the basis of sex*, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a) (emphasis added). In *Bostock v. Clayton County*, the Supreme Court concluded that gender identity discrimination is necessarily sex discrimination under Title VII of the Civil Rights Act of 1964, *see* 140 S. Ct. at 1741-42, 1745-47, and this Court has held that *Bostock* applies in the Title IX context as well, *see Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 616 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2878 (2021). As the Supreme Court explained in *Bostock*, discriminating against a person for being transgender is sex discrimination because "[i]t is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." 140 S. Ct. at 1741. For example, a female who is discriminated against because she was designated male at birth is necessarily being discriminated against

17

based on sex—i.e., she would not be subject to discrimination if not for the fact that her designated sex at birth was male. *Id.* In reaching its conclusion, the Supreme Court acknowledged that "transgender status" is a distinct concept from "sex," but observed that sexual harassment and discrimination based on motherhood are also distinct concepts that, unquestionably, still qualify as sex discrimination. *Id.* at 1742, 1746-47.

Title IX's implementing regulations confirm that the nondiscrimination mandate applies to school athletics as well, while expressly permitting sex-segregated teams. *See* 34 C.F.R. § 106.41(a)-(b); 28 C.F.R. § 54.450(a)-(b). The parties here do not dispute the propriety of sex-segregated athletics; rather, they dispute how Title IX's nondiscrimination mandate and the rules' allowance for sex-segregated teams apply to transgender students.

The West Virginia law at issue operates as a blanket prohibition on female transgender students' participation in school athletics consistent with their gender identity. West Virginia Code § 18-2-25d requires schools to designate athletic teams or sports as either (1) a boys' team or sport; (2) a girls' team or sport; or (3) a coeducational or mixed team or sport. W. Va. Code Ann. § 18-2-25d(c)(1). It then prohibits "students of the male

sex" from participating on an athletic team or sport designated as a girls' athletic team or sport. *Id.* A student's sex is determined "based solely on the individuals' reproductive biology and genetics at birth." *Id.* § 18-2-25d(b)(1).

A straightforward application of this Court's decision in *Grimm* compels the conclusion that § 18-2-25d violates Title IX by categorically barring B.P.J. and other transgender girls—and no one else—from participating on school teams consistent with their gender identity. As the district court found, B.P.J. began living as a girl when she was three years old and has lived fully as a girl—at school and home—since third grade. B.P.J. has been taking a puberty blocker and is not experiencing any of the physiological changes associated with male puberty. *B.P.J. v. West Virginia State Bd. of Educ.*, No. 21-cv-316, 2023 WL 111875, at *1 (S.D. W. Va. Jan. 5, 2023). But § 18-2-25d prohibits B.P.J. from playing on a sports team that conforms with her gender identity and excludes her "on the basis of sex." *See Grimm*, 972 F.3d at 616 (quotation marks omitted).

This discriminatory treatment is unlawful under Title IX because B.P.J. is treated "worse than others who are similarly situated." *See id.* at 618 (quotation marks omitted). Based solely on her sex assigned at

birth, § 18-2-25d needlessly denies B.P.J. something that her cisgender female classmates take for granted: the ability to participate on an athletic team at school with her friends consistent with her lived identity. West Virginia's law singles out B.P.J. based on her sex assigned at birth, without any regard to whether she has any competitive advantage, and forces her either to forgo participation on single-sex sports teams or to participate on teams inconsistent with her gender identity. That sex-based discrimination contravenes a core aspect of transgender people's identities, subjecting them to potential harassment, and violates medical treatment protocols. The court thus erred in concluding that defendants did not discriminate against B.P.J. in violation of Title IX.

Applying much the same reasoning as in *Bostock* and *Grimm*, courts have repeatedly and correctly recognized that Title IX's bar against sex discrimination prohibits discrimination against transgender students. For example, appellate courts have largely concluded that policies barring transgender students from using the bathroom that aligns with their gender identity violate Title IX. As these courts have explained, the discriminator is necessarily relying on students' sex assigned at birth to deny access to a bathroom that aligns with their gender identity. *See*

*Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1046-51 (7th Cir. 2017); *Dodds v. United States Dep't of Educ.*, 845 F.3d 217, 221-22 (6th Cir. 2016); *see also Parents for Privacy v. Barr*, 949 F.3d 1210, 1228-29 (9th Cir. 2020) (transgender students' use of sex-segregated spaces that align with their gender identity does not violate Title IX rights of cisgender students); *Doe ex rel. Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 534-35 (3d Cir. 2018).[34] Although these decisions did not concern athletics, "such authority nonetheless establishes that discrimination based on transgender status is generally prohibited under federal law." *Soule ex rel. Stanescu v. Connecticut Ass'n of Schs.*, 57 F.4th 43, 56 (2d Cir. 2022), *reh'g en banc ordered*, Feb. 13, 2023.

West Virginia Code § 18-2-25d likewise discriminates based on transgender status in violation of Title IX by *categorically* barring transgender girls from participating on sports teams that align with their gender identity. As with the unlawful bathroom policies discussed above, West Virginia's law bars every transgender girl from participating in athletics consistent with her gender identity simply because of the sex

---

[34] *But see Adams ex rel. Kasper v. School Bd. of St. Johns Cnty.*, 57 F.4th 791 (11th Cir. 2022) (en banc).

she was assigned at birth. The law singles out transgender girls for discriminatory treatment because it has no effect on the ability of cisgender students to participate on sports teams consistent with their gender identity. Moreover, the law has no effect on transgender boys who wish to participate on sports teams consistent with their gender identity. The unequal treatment of transgender *females* alone is unequivocally discrimination on the basis of sex.

There is no merit to West Virginia's finding that, absent enforcement of § 18-2-25d, "biological males" will displace "females to a substantial extent." W. Va. Code Ann. § 18-2-25d(a)(3). The experiences of the amici States with inclusive and equitable school athletics policies show that such policies do not compromise fairness or reduce opportunities for cisgender athletes. Interscholastic sports organizations and local school districts in the amici States have adopted policies to ensure that transgender students will have equal access to sports participation—and these policies have not resulted in fewer opportunities for cisgender students.[35]

---

[35] *See, e.g.*, **California**: California Interscholastic Fed'n, *Constitution & Bylaws 2022-23*, at 98 (transgender students must be afforded opportunity to participate in sports in manner consistent with their gender identity); Fresno Unified Sch. Dist., *Fresno Unified Admin. Regul. (AR) 5145.3:*

(continued on the next page)

*See Grimm*, 972 F.3d at 614 (noting relevance of school districts successfully implementing inclusive policies).

For example, since 2009, the New Jersey State Interscholastic Athletic Association, a voluntary organization that administers interscholastic athletics in the State, has permitted transgender students to participate in gender-segregated competitive sports consistent with their

---

*Nondiscrimination/Harassment* 6 (Mar. 7, 2022) (same). **Colorado**: Colorado High Sch. Activities Ass'n, *CHSAA Transgender Inclusion Bylaw & Policy* p. 2 (same). **Delaware**: 14 Del. Admin. Code § 1024(8.5.1). **Maryland**: Maryland Pub. Secondary Schs. Athletic Ass'n, *MPSSAA Guidance for Participation of Transgender Youth in Interscholastic Athletics* pp. 1-2 (Aug. 2016) (same, for interscholastic sports); **Massachusetts**: Massachusetts Interscholastic Athletic Ass'n, *Rules and Regulations Governing Athletics: A Handbook for Principals and Athletic Directors* 41 (same). **Minnesota**: Minnesota State High Sch. League, *Official Handbook, 300.00: Administration of Student Eligibility Bylaws* 61 (same); University of Minn., *Equity and Access: Gender Identity, Gender Expression, Names and Pronouns* (same, for all university programs and activities). **Nevada**: Nevada Interscholastic Activities Ass'n, *NIAA Transgender Participation Position Statement and Policy* p. 1 (Apr. 6, 2016) (same, for "gender specific sports team[s]"). **New York**: New York State Pub. High Sch. Athletic Ass'n, *NYSPHSAA Handbook* 49-51 (Feb. 2023) (equal participation by transgender students in all interscholastic sports activities consistent with their gender identity). **Oregon**: Oregon Sch. Activities Ass'n, *2022-2023 Oregon Sch. Activities Association Handbook* 80-82 (same). **Rhode Island**: Rhode Island Interscholastic League, *Rules and Regulations, Article 3* (June 21, 2022) (same). **Washington**: Washington Interscholastic Activities Ass'n, *WIAA Handbook 2022-23, at 35* (Dec. 6, 2022) (same).

23

gender identity.[36] The Albuquerque Public Schools—the largest school district in New Mexico—mandates that transgender students have equal access to recreational and competitive sports programs "in a manner consistent with their gender identity."[37] And the Los Angeles Unified School District, one of the largest school districts in the country, has implemented a transgender-inclusive sports policy for many years "without problems."[38] As a school district official in Los Angeles has reported, the district's policy has led to a positive "transformation" in the district's schools: an experience that "stands in stark contrast" to "expressed concerns that students will abuse the policy."[39] Notwithstanding this lengthy history, amici States are not aware of evidence that transgender athletes have dominated any sport or competition, or have caused scholarship opportunities to be unfairly denied to cisgender competitors.

---

[36] New Jersey State Interscholastic Athletic Ass'n, *NJSIAA & NJSCA Coaches Handbook: 2020-2021*, at 28-30.

[37] *See* Albuquerque Pub. Schs., *Non-Discrimination for Students: Gender Identity and Expression* (May 2016).

[38] *See* Patrick McGreevy, *California Transgender Students Given Access to Opposite-Sex Programs*, L.A. Times (Aug. 12, 2013).

[39] *See* Judy Chiasson, *Success and Opportunity for Transgender Students*, HuffPost (updated Feb. 2, 2016).

West Virginia's fear that "biological males" will substantially displace "biological females" in women's sports, W. Va. Code Ann. § 18-2-25d(a)(3), is "based upon sheer conjecture and abstraction," unmoored from any actual evidence that such a problem existed, *see Grimm*, 972 F.3d at 614 (quotation marks omitted). The district court found that "West Virginia had no 'problem' with transgender students playing school sports and creating unfair competition or unsafe conditions"; indeed, the record did not show a single instance "of any transgender person playing school sports" in West Virginia at the time § 18-2-25d was enacted. *B.P.J.*, 2023 WL 111875, at *4. And there is no showing that B.P.J.'s participation on the girls' cross country and track teams is unfair to cisgender girls. To the contrary, the record showed that no student was prevented from participating on teams or in events because of B.P.J.'s participation while the preliminary injunction was in effect. Nor did B.P.J. dominate the events in which she participated. For example, B.P.J. finished in 51st place out of 66 participants in one cross country event and she finished in 123rd place out of 150 participants in another event. (*See* Joint Appendix (J.A.) 3107-3108, 3109.)

For similar reasons, § 18-2-25d contravenes the Equal Protection Clause. The Supreme Court has long made clear that equal protection prohibits government policies that serve only to express "negative attitudes" "or fear" toward people viewed as "different." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 448 (1985); *see also Nguyen v. Immigration & Naturalization Serv.*, 533 U.S. 53, 68 (2001) (the Equal Protection Clause bars a decision built on stereotypes and a "frame of mind resulting from irrational or uncritical analysis"). Section 18-2-25d falls squarely into this category. The law's categorical prohibition on the participation of transgender female students in school-sponsored female-only sports activities, without regard to any supposed competitive advantages that they might have, serves only to stigmatize and exclude transgender students, and furthers no legitimate governmental interests in promoting equity in sports.

As explained above, the experiences of the amici States with inclusive and equitable school athletics policies show that such policies will not compromise fairness or reduce opportunities for cisgender athletes (see *supra* at 22-25) and confirm that there is no evidence that any concrete

26

harm will result from permitting transgender students like B.P.J. to participate in female athletics.

In contrast, the evidentiary record here shows that the harm the law causes to transgender students generally and to B.P.J. specifically is real. Consistent with the evidence showing that discrimination against transgender students causes significant emotional harms (see *supra* at 7-11), B.P.J. explained that it is "upsetting and hurtful" that some people treat her "differently from everyone else just because" she is transgender. (J.A. 3103-3104 (quotation marks omitted).) And her mother noted that requiring B.P.J. to participate on a boys' team "would completely erase who [B.P.J.] is, and it would devastate her because she is a girl." (J.A. 3104 (quotation marks omitted).) Under well-established constitutional analysis, such discrimination cannot withstand any level of equal protection scrutiny.

## CONCLUSION

This Court should reverse the decision below.

Dated:  New York, New York
        April 3, 2023

Respectfully submitted,

ANNE E. LOPEZ                          LETITIA JAMES
  *Attorney General*                     *Attorney General*
  *State of Hawai'i*                      *State of New York*


                                By:   */s/ Mark S. Grube*
                                      MARK S. GRUBE
                                      Assistant Solicitor General

KIMBERLY T. GUIDRY                     BARBARA D. UNDERWOOD
  *Solicitor General*                    *Solicitor General*
KALIKO'ONĀLANI D. FERNANDES            JUDITH N. VALE
  *Deputy Solicitor General*             *Deputy Solicitor General*
                                           *of Counsel*


425 Queen Street                       28 Liberty Street
Honolulu, HI 96813                     New York, NY 10005
(808) 586-1360                         (212) 416-8028


*(Counsel listing continues on next page.)*

28

ROB BONTA
  *Attorney General*
  *State of California*
1300 I Street
Sacramento, CA 95814

PHILIP J. WEISER
  *Attorney General*
  *State of Colorado*
1300 Broadway
Denver, CO 80203

WILLIAM TONG
  *Attorney General*
  *State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

KATHLEEN JENNINGS
  *Attorney General*
  *State of Delaware*
820 N. French Street
Wilmington, DE 19801

KWAME RAOUL
  *Attorney General*
  *State of Illinois*
100 West Randolph Street
Chicago, IL 60601

AARON M. FREY
  *Attorney General*
  *State of Maine*
6 State House Station
Augusta, ME 04333

ANTHONY G. BROWN
  *Attorney General*
  *State of Maryland*
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202

ANDREA JOY CAMPBELL
  *Attorney General*
  *Commonwealth of Massachusetts*
One Ashburton Place
Boston, MA 02108

DANA NESSEL
  *Attorney General*
  *State of Michigan*
P.O. Box 30212
Lansing, MI 48909

KEITH ELLISON
  *Attorney General*
  *State of Minnesota*
102 State Capitol
75 Rev. Dr. Martin Luther King Jr. Blvd.
St. Paul, MN 55155

MATTHEW J. PLATKIN
  *Attorney General*
  *State of New Jersey*
25 Market Street
Trenton, NJ 08625

ELLEN F. ROSENBLUM
  *Attorney General*
  *State of Oregon*
1162 Court Street N.E.
Salem, OR 97301

PETER F. NERONHA
  *Attorney General*
  *State of Rhode Island*
150 South Main Street
Providence, RI 02903

CHARITY R. CLARK
  *Attorney General*
  *State of Vermont*
109 State Street
Montpelier, VT 05609-1001

ROBERT W. FERGUSON
  *Attorney General*
  *State of Washington*
P.O. Box 40100
Olympia, WA 98504

BRIAN L. SCHWALB
  *Attorney General*
  *District of Columbia*
400 6th Street, NW, Suite 8100
Washington, D.C. 20001

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Kelly Cheung, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 5,754 words and complies with the typeface requirements and length limits of Rules 29 and 32(a)(5)-(7) and the corresponding local rules.

_/s/ Kelly Cheung_