**NOS. 23-1078(L); 23-1130 XAP**

In The
# United States Court Of Appeals
### For The Fourth Circuit

## B.P.J., by her next friend and mother; HEATHER JACKSON,

*Plaintiff – Appellant/Cross-Appellee,*

v.

## WEST VIRGINIA STATE BOARD OF EDUCATION; HARRISON COUNTY BOARD OF EDUCATION; W. CLAYTON BURCH, in his official capacity as State Superintendent; DORA STUTLER, in her official capacity as Harrison County Superintendent,

*Defendants – Appellees,*

and

## WEST VIRGINIA SECONDARY SCHOOL ACTIVITIES COMMISSION,

*Defendant-Appellee / Cross-Appellant,*

and

## THE STATE OF WEST VIRGINIA; LAINEY ARMISTEAD,

*Intervenors – Appellees.*

-----------------------------------------------------------------------------------

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA AT CHARLESTON
_____

### APPELLEE/CROSS-APPELLANT REPLY BRIEF
_____

Roberta F. Green
SHUMAN MCCUSKEY SLICER
1411 Virginia St. E., Suite 200
Charleston, WV 25301
(304) 345-1400
rgreen@shumanlaw.com

*Counsel for Appellees/
  Cross-Appellant*

Kimberly M. Bandy
SHUMAN MCCUSKEY SLICER
1411 Virginia St. E., Suite 200
Charleston, WV 25301
(304) 345-1400
kbandy@shumanlaw.com

*Counsel for Appellees/
  Cross-Appellant*

Shannon M. Rogers
SHUMAN MCCUSKEY SLICER
1411 Virginia St. E., Suite 200
Charleston, WV 25301
(304) 345-1400
srogers@shumanlaw.com

*Counsel for Appellees/
  Cross-Appellant*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ ii

ARGUMENT ..................................................................................1

I.    B.P.J.'s Argument Underscores WVSSAC's Standing as it Took No Action Worthy of Labeling it a State Actor, and Likewise Does Not Meet the Threshold Requirements for Such a Classification .........................1

    A.    The Supreme Court of Appeals of West Virginia has Never Previously Declared WVSSAC to be a State Actor .............................4

    B.    B.P.J. Has Failed to Prove That WVSSAC Maintains the Requisite 'Controlling Authority' Required to Adjudicate it to be a State Actor ................................................................8

    C.    As a Matter of Law, Eligibility Determinations Do Not Constitute an Appropriate Basis for Pre-Enforcement Review as to WVSSAC .....................................................................20

    D.    The Court Should Vacate the District Court's Ruling as to WVSSAC ..........................................................................24

CONCLUSION ................................................................................25

CERTIFICATE OF COMPLIANCE .................................................27

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Evac EMS, Inc., v. Cheatham*,
   260 F. Supp. 3d 628 (S.D. W. Va. 2017) ......................................22

*Alston v. Virginia High School League, Inc.*,
   144 F. Supp.2d 526 (W. D. Va. 1999)..................................17, 20

*American States Ins. Co. v. Surbaugh*,
   231 W. Va. 288 .12, 745 S.E.2d 179 (2013) ................................7

*Baisden v. WVSSAC*,
   211 W. VA. 725, 568 S.E.2d 21 (2002) .......................................7

*Bland v. State*,
   230 W. Va. 263, 737 S.E.2d 291 (2012) .....................................7

*Brentwood Academy v. Tennessee Secondary School Athletic Association*,
   180 F.3d 758 (6th Cir. 1999), *rev'd* 531 U.S. 208 (2001)...........17, 20, 24, 25

*Communities for Equity v. Michigan High School Athletic Association*,
   80 F. Supp. 2d 729 (W. D. Mich. 2000)...........................................16, 20, 25

*Crispen v. WVSSAC*,
   234 W. VA. 731, 769 S.E.2d 881 (2015) .....................................7

*Croft v. TBR, Inc.*,
   222 W. Va. 224, 664 S.E.2d 109 (2008) .....................................7

*Cureton v. NCAA*,
   198 F.3d 107 (3d Cir. 1999) .................................................11, 18

*DeBauche v. Trani*,
   191 F.3d 499 (4th Cir. 1999) ....................................................14

*Drumheller v. Fillinger*,
   230 W. Va. 26, 736 S.E.2d 26 (2012) .........................................7

*Emil N. v. Healy B.-N.,*
No. 20-0396 (W. Va. May. 20, 2021) .............................................................6

*In re Friend Q*,
230 W. Va. 652, 742 S.E.2d 68 (2013) ........................................................7

*Gallery v. WVSSAC*,
205 W. Va. 364, 518 S.E.2d 368 (1999) ......................................................7

*Harris v. Cnty Comm'n of Calhoun Cnty*,
238 W. Va. 556, 797 S.E.2d 62 (2017) ........................................................7

*Israel v. West Virginia Secondary Schools Activities Commission*,
182 W. Va. 454, 388 S.E.2d 480 (1989) ................................................*passim*

*Jones v. West Virginia State Board of Educ. et al.*,
218 W. Va. 52, 622 S.E.2d 289 (2005) ...........................................5, 6, 7, 12

*Mayo v. WVSSAC*,
233 W. Va. 88, 872 S.E.2d 224 (2008) ...................................................6, 7, 9

*McGee v. Va. High School League, Inc.*,
2011 U.S. Dist. Lexis 110270 (W.D. Va. 2011) ..........................................17

*State ex rel. Med. Assurance of W. Va., Inc. v. Recht*,
213 W. Va. 457, 583 S.E.2d 80 (2003) .....................................................6, 7

*Mentavlos v. Anderson*,
249 F.3d 301 (4th Cir. 2001) .................................................................1, 15

*Miller v. Brown*,
462 F.3d 312 (4th Cir. 2006) ......................................................................22

*Mylan Labs v. Am. Motorists Ins. Co.*,
226 W. Va. 307, 700 S.E.2d 518 (2010) ......................................................7

*Nat'l Collegiate Ath. Ass'n v. Tarkanian*,
109 S. Ct. 454 (1988).................................................................................20

*Nat'l Park Hosp. Ass'n v. Dep't of the Interior*,
538 U.S. 803, 123 S. Ct. 2026, 155 L. Ed. 2d 1017 (2003) .........................22

*NCAA v. Tarkanian*,
    488 U.S. 179 (1988)...................................................................11, 14

*Newton v. Morgantown Mach. & Hydraulics*,
    242 W. Va. 650, 838 S.E.2d 734 (2019) ....................................6

*Parson v. Haliburton Energy Services*,
    237 W. Va. 138, 785 S.E.2d 864 (2016) .....................................7

*Peltier v. Charter Day School*,
    37 F.4th 194 (4th Cir. 2022)..............................................*passim*

*Saleh v. Damron*,
    242 W. Va. 568, 836 SE.2d 716 (2019) .....................................6

*Shipman v. Balt. Police Dept.*,
    2014 U.S. Dist. Lexis 59733.......................................................14

*Smith v. NCAA*,
    266 F.3d 152 (3d Cir. 2001) ..............................................*passim*

*State v. Conn*,
    ___W. Va. ___, ___ S.E.2d ___ (2022 W. Va. LEXIS 199) ........................6

*State v. Keith*,
    235 W. Va. 421, 774 S.E.2d 502 (2015) .....................................7

*Texas v. United States*,
    523 U.S. 296, 118 S. Ct. 1257, 140 L. Ed. 2d 406 (1998) ...........................22

*Thomas v. Union Carbide Agric. Products Co.*,
    473 U.S. 568, 105 S. Ct. 3325, 87 L. Ed. 2d 409 (1985) ..............................22

*Toppings v. Meritech Morg. Servs.*,
    212 W. Va. 73, 569 S.E.2d 149 (2002) .......................................7

*United Bhd. Of Carpenters & Joiners, Local 610 v. Scott*,
    463 U.S. 825 (1983)...................................................................14

*Valentine v. Sugar Rock, Inc.*,
    234 W. Va. 526, 766 S.E.2d 785 (2014) .....................................7

iv

*State ex rel. Vanderra Res., LLC v. Hummel*,
    242 W. Va. 35, 829 S.E.2d 35 (2019) ............................................................6

*State ex rel. W. Va. Hosps. Inc., v. Gaujot*,
    ___ W. Va. ___, ___ S.E.2d ___ (2022 W. Va. Lexis 328)............................6

*West Virginia State Police v. JH*,
    244 W. Va. 720, 856 S.E.2d 679 (2021) ......................................................6

*State ex rel WVSSAC v. Hrko*,
    213 W. Va. 219, 579 S.E.2d 560 (2003) ......................................................7

*State ex rel WVSSAC v. Webster*,
    228 W. Va. 75, 717 S.E.2d 859 (2011) ........................................................7

*Yellow Springs Exempted Village School District Board of Education
v. Ohio High School Athletic Association*,
    647 F.2d 651 (6th Cir. 1981) ..............................................................17, 18

*Zelenka v. City of Weirton*,
    208 W. Va. 243, 539 S.E.2d 750 (2000) ......................................................7

## Constitutional Provisions

U.S. Const. amend. XIV ...........................................................................14, 16, 17

U.S. Const. art. XIV, § 1 .......................................................................1, 14, 16, 20

## Treatises

Black's Law Dictionary 1100 (7th ed. 1999) ............................................................6

## Other Authorities

WVSSAC Football Playoff Manual at 10
    https://www.wvssac.org/sports-schedules/football/ ......................................21

**ARGUMENT**

**I.      B.P.J.'s Argument Underscores WVSSAC's Standing as it Took No Action Worthy of Labeling it a State Actor, and Likewise Does Not Meet the Threshold Requirements for Such a Classification.**

The Response/Reply Brief of Plaintiff-Appellant/Cross-Appellee B.P.J., By Her Next Friend And Mother, Heather Jackson (Response) demonstrates further the strengths of WVSSAC's case. B.P.J. does not identify or even suggest an **action** WVSSAC has taken so as to fall within 'state **actor**.' Instead, B.P.J. sidesteps *Peltier v. Charter Day School, Inc.,* in which this Court held that "'[i]n assessing a private actor's relationship with the state for purposes of an Equal Protection claim, the court must determine whether there is a sufficiently close nexus between the **defendant's challenged action** and the state so that **the challenged action** may be fairly treated as that of the state itself.'" 37 F.4th 104, 115 (4th Cir. 2022) (emphasis added), quoting *Mentavlos v. Anderson*, 249 F.3d 301, 314 (4th Cir. 2001). What remains missing even now, is any action whatsoever by WVSSAC affecting B.P.J., therefore providing no basis for any Equal Protection or Title IX analysis. Rather, B.P.J. asserts that "there is no question that WVSSAC is required to comply with H.B. 3293 and enforce it against B.P.J."[1] However, the authority cited for such a bold proposition is nothing more than WVSSAC's assertion in discovery that it follows the law generally. Simply put, B.P.J. asks this Court to rely upon WVSSAC's

---

[1] Response Brief at 55.

admission that it follows all laws that apply to it[2] and construe from that that WVSSAC would be "require[d] . . . to prevent B.PP.J. from playing on girls' sports teams[.]"[3] In reality, WVSSAC has no role under H.B. 3293. Any role it may have in eligibility determinations is remote and speculative. The premature and unexpressed predicates for any determination of a player's eligibility are insufficient to convert WVSSAC into a state actor.

While relying upon statutory pronouncements of delegated control and authority of WVSSAC, B.P.J. declines to engage in any analysis whatsoever – most pointedly, the analysis set out in S*mith v. NCAA,*[4] which provides the only test for when control and authority become 'controlling authority' so as to federalize a private association, corporation, or non-state actor, similar to WVSSAC. *Smith*'s analysis is salient to the Court and these parties. Control and authority do not become 'controlling authority,' absent more. *Smith* provides the rubric for determining 'more.'

---

[2] Response Brief at 55, citing JA0920:
    **Request No. 27: admit that the West Virginia Secondary School Athletic [sic] Commission must comply with H.B. 3293 unless enjoined from doing so by a court.**
    <u>RESPONSE:</u>
    Admitted and denied. WVSSAC denies that H.B. 3293 includes express provisions, prescriptions, duties or other relative to WVSSAC. However, WVSSAC admits that it must follow all laws that include a duty for it.
[3] Response Brief at 55.
[4] *Smith v. NCAA*, 266 F.3d 152 (3d Cir. 2001).

In *Smith,* the Third Circuit considered whether issuing rules and regulations for NCAA's member schools to follow constitutes 'controlling authority.' *Smith v. NCAA*, 266 F.3d at 156 (citations omitted). The Court found that because member schools nonetheless make decisions regarding their own athletic programs – including whether to follow the rules or accept a sanction – the rules and regulations do not constitute 'controlling authority.' The *Smith* Court envisioned that a situation could exist where an athletic association takes control and makes decisions for member schools so as to make its 'controlling authority' meaningful – yet the Court did not find it in *Smith*. In a nutshell, in any instance where a member school has 'practical alternatives,' the association does not control. Where a school has 'no practical alternative to compliance with [the athletic association's] demands,' the association's authority is controlling. *Id.*, 266 F.3d at 159. By illustration, then, B.P.J.'s school, Bridgeport Middle School, can elect to leave WVSSAC and still compete in all meets, games, and matches (with the exception of championships). In contrast, Bridgeport Middle School cannot elect to leave its governing board, Harrison County Board of Education. Controlling authority is the distinction.

It is not disputed that B.P.J. identified WVSSAC as having policies that are gender identical, neutral, and otherwise non-actionable. It further remains undisputed that WVSSAC had no role in passing H.B. 3293. B.P.J. concedes these

facts but discounts them as meaningless.[5] Yet, it is profoundly significant that WVSSAC is the only party below that can make such a distinction. Further, where the District Court found WVSSAC raised only 'state actor' below, B.P.J. does not challenge WVSSAC's pre-enforcement review arguments as improvident or premature. After all, WVSSC did not raise solely 'state actor' below – B.P.J. concedes the same.

Now, at the close of the briefing process, B.P.J.'s case against WVSSAC boils down to a remote, speculative eligibility determination that reviewing courts have found insufficient to anchor a 'state actor' determination, along with a mischaracterization of West Virginia law and a misinterpretation of this Court's decision in *Peltier v. Charter Day School,* 37 F.4th 194 (4th Cir. 2022). To each of these assertions, WVSSAC responds as follows.

### A.     The Supreme Court of Appeals of West Virginia has Never Previously Declared WVSSAC to be a State Actor.

WVSSAC has never been adjudged a state actor until this litigation – and here, the determination was made on the basis of minimal discovery and no evidence that WVSSAC took any action as required, let alone any action sufficient to label it a 'state actor.' Indeed, a pillar of B.P.J.'s argument against WVSSAC remains that the Supreme Court of Appeals of West Virginia has already

---

[5] Response Brief at 50.

determined WVSSAC to be a state actor. Decidedly, no Court has made such a determination regarding WVSSAC, nor would WVSSAC fail in its duty of candor to either the District Court or this tribunal in proceeding on this basis if West Virginia's highest court or any court had settled this issue. Contrary to B.P.J.'s assertion, neither *Israel v. West Virginia Secondary Schools Activities Commission,* 182 W. Va. 454, 388 S.E.2d 480 (1989), nor *Jones v. West Virginia State Board of Educ. et al.,* 218 W. Va. 52, 622 S.E.2d 289 (2005), specifically addresses the issue of whether WVSSAC is a state actor for purposes of Equal Protection claims or otherwise. The *Jones* Court considers whether the *plaintiff's claims* sound in Equal Protection so as to mandate a finding of 'state action or actor' (a finding it never reaches). The *Israel* Court embeds in footnote 4 a list of organizations in other jurisdictions without ever undertaking any analysis whatsoever of their similarities to WVSSAC or vice versa under the 'state actor' rubric. Where B.P.J. alleges that WVSSAC has not proven what it is not, WVSSAC responds that,[6] more pointedly, B.P.J. has not proven any challenged action (per *Peltier*), any meaningful entwinement (per *Smith* and *Peltier)*, any concrete basis for this claim. WVSSAC is not a rightful party here.

In anchoring the Equal Protection claim as against WVSSAC to *Israel* and *Jones,* B.P.J. relies upon a footnote in *Israel v. West Virginia Secondary Schools*

---

[6] Response Brief at 52.

*Activities Comm'n,* 182 W. Va. 454, 388 S.E.2d 480 (1989).[7] However, in doing so, B.P.J. fails to concede that in West Virginia (as no doubt in other jurisdictions), footnotes are precisely and only *obiter dicta.*[8] To be clear, if in either *Jones* or *Israel* or otherwise the West Virginia Supreme Court of Appeals had analyzed WVSSAC under such a rubric and had found it to be a state actor, B.P.J. would herald that analysis and that holding. B.P.J. has not done so. Conversely, the Supreme Court of Appeals of West Virginia has expressly found that WVSSAC is not a state agency on the basis that it has been a voluntary association since 1916 (and was not created by the Legislature), it is not funded by public moneys, and not all public or private schools in West Virginia have elected to belong.[9] Perhaps most damaging to B.P.J.'s case against WVSSAC on this basis, however, is the uncontradicted authority in West Virginia that footnotes are without precedential value.[10] The authority that

---

[7] Response Brief at 50.

[8] *See, e.g., State ex rel. Med. Assurance of W. Va., Inc. v. Recht,* 213 W. Va. 457, 471, 583 S.E.2d 80, 94 (2003), stating that "language in a footnote generally should be considered obiter dicta which, by definition, is language 'unnecessary to the decision in the case and therefore not precedential.' Black's Law Dictionary 1100 (7th ed. 1999)." Syl. pt. 2, 3, *Mayo v. WVSSAC,* 233 W. Va. 88, 96, 872 S.E.2d 224, 232 (2008).

[9] Syl. pt. 2, 3, *Mayo v. WVSSAC,* 233 W. Va. 88, 96, 872 S.E.2d 224, 232 (2008).

[10] *See, e.g., State ex rel. W. Va. Hosps. Inc., v. Gaujot,* ___ W. Va. ___, ___ S.E.2d ___ (2022 W. Va. Lexis 328, *41); *State v. Conn,* ___W. Va. ___, ___ S.E.2d ___ (2022 W. Va. LEXIS 199, *29); *Emil N. v. Healy B.N.,* 2021 W. Va. Lexis 245 n.4; *West Virginia State Police v. JH,* 244 W. Va. 720, 734, 856 S.E.2d 679, 693 (2021); *Newton v. Morgantown Mach. & Hydraulics,* 242 W. Va. 650 n.1, 838 S.E.2d 734 n.1 (2019); *Saleh v. Damron,* 242 W. Va. 568, 579, 836 SE.2d 716, 727 (2019); *State ex rel. Vanderra Res., LLC v. Hummel,* 242 W. Va. 35 n.23, 829 S.E.2d 35 n.23

B.P.J. asks this Court to adopt is not compelling authority on the issue. Indeed, it is not authority at all, but rather, dicta.

B.P.J. further fails to acknowledge that WVSSAC has been before West Virginia's highest court on eight separate occasions[11] without a finding that it is a state actor. If B.P.J. were to prevail on the argument that WVSSAC is a 'state actor,' it would be the first such instance. B.P.J. continues to direct this Court to a footnote that is remarkable for precisely what is does **not** say. Footnote 4 of *Israel* states in passing that "[e]very court that has considered the question whether associations like the [WV]SSAC are state actors have found that those organizations are so

---

(2019); *Harris v. Cnty Comm'n of Calhoun Cnty,* 238 W. Va. 556 n.10, 797 S.E.2d 62 n.10 (2017); *Parson v. Haliburton Energy Services,* 237 W. Va. 138 n.5, 785 S.E.2d 864 n.5 (2016); *State v. Keith,* 235 W. Va. 421 n.8, 774 S.E.2d 502, n.8 (2015); *Valentine v. Sugar Rock, Inc.,* 234 W. Va. 526, 532, 766 S.E.2d 785, 791 (2014); *American States Ins. Co. v. Surbaugh,* 231 W. Va. 288 .12, 745 S.E.2d 179 n.12 (2013); *In re Friend Q,* 230 W. Va. 652 n.20, 742 S.E.2d 68 n.20 (2013); *Bland v. State,* 230 W. Va. 263, n.8, 737 S.E.2d 291 n.8 (2012); *Drumheller v. Fillinger,* 230 W. Va. 26, 34, 736 S.E.2d 26, 34 (2012); *Mylan Labs v. Am. Motorists Ins. Co.,* 226 W. Va. 307, 318, 700 S.E.2d 518, 529 (2010); *Croft v. TBR, Inc.,* 222 W. Va. 224, 230, 664 S.E.2d 109, 115 (2008); *State ex rel Medical Assurance v. Recht,* 213 W. Va. 457, 471, 583 S.E.2d 80, 94 (2003): *Toppings v. Meritech Morg. Servs.,* 212 W. Va. 73, 74, 569 S.E.2d 149, 150 (2002); *Zelenka v. City of Weirton,* 208 W. Va. 243 n.11, 539 S.E.2d 750 n.11 (2000).

[11] *State ex rel WVSSAC v. Webster,* 228 W. Va. 75, 717 S.E.2d 859 (2011); *Mayo v. WVSSAC,* 223 W. VA. 88, 672 S.E.2d 224 (2008); *State ex rel WVSSAC v. Hrko,* 213 W. Va. 219, 579 S.E.2d 560 (2003); *Baisden v. WVSSAC,* 211 W. VA. 725, 568 S.E.2d 21 (2002); *Crispen v. WVSSAC,* 234 W. VA. 731, 769 S.E.2d 881 (2015); *Jones v. West Virginia SSAC,* 218 W. Va. 52, 622 S.E.2d 289 (2005), *Gallery v. WVSSAC,* 205 W. Va. 364, 518 S.E.2d 368 (1999); *Israel v. West Virginia Secondary Schools Activities Comm'n,* 182 W. Va. 454, 388 S.E.2d 480 (1989).

intertwined with the state that their acts constitute state action[.]" (citations omitted). Imperatively, if West Virginia's Supreme Court had believed that WVSSAC were a state actor, the Court could and would have stated it outright but declined to do so. The *Israel* Court does not analyze what constitutes sufficient 'intertwining' and stops far short of any relevant assessment or holding. Indeed, even if the *Israel* Court had undertaken that analysis and made such a finding, given that WVSSAC has never been adjudged or identified as a 'state actor,' such a finding or holding would hardly be relegated to an oblique, indirect reference in a footnote. Moreover, the *Israel* decision came down on December 20, 1989. Since that time, WVSSAC has appeared before West Virginia's highest court more than a half dozen times without a finding that it is a 'state actor' and without a reference to *Israel*'s having found it to be so. Indeed, since that time, WVSSAC has continued to appear before the Supreme Court without seeking immunities and other protections that it could have claimed, had it been a state actor.

**B.**    **B.P.J. Has Failed to Prove That WVSSAC Maintains the Requisite 'Controlling Authority' Required to Adjudicate it to be a State Actor.**

B.P.J. adroitly sidesteps *Smith v. NCAA,* attempting to reshape two cases in which West Virginia's Court considered WVSSAC's statutory delegation of 'control' without a pronouncement that WVSSAC is a state actor.[12] B.P.J. fails to

---

[12] Response Brief at 54.

engage with the rubric provided by *Smith v. NCAA,* discounting it with an insufficient and inaccurate factual assertion,[13] yet stops far short of addressing, let alone distinguishing, *Smith*'s detailed analysis of what constitutes *controlling authority*. The *Smith* Court considers many of the same cases relied upon by B.P.J., the District Court, and WVSSAC, analyzing those cases under 'controlling authority.'

B.P.J. has never disputed that WVSSAC is differently situated – indeed, it cannot be disputed that WVSSAC is the only Defendant[14] that has asserted that it is not a proper party based on its lack of status as a state actor and because it has no 'controlling authority' over any federally funded programs. No doubt that explains, in part, B.P.J.'s decision to dedicate 7 pages of the 56-page Response Brief to WVSSAC's issues – an inconsequential minority. It is also undisputed that WVSSAC is the only Defendant who has never been adjudicated as or otherwise determined to be a state actor. WVSSAC is the only Defendant who is and has been judicially recognized to be a private corporation and voluntary association.[15] B.P.J. fails to address, let alone counter, WVSSAC's analysis presented previously and

---

[13] Response Brief at 54; Consolidated Memorandum in Opposition to Defendants' Motions for Summary Judgment (ECF No. 331) ('Plaintiff's Opposition') at 24, quoting *Smith v. NCAA*, 266 F.3d 152 (3d Cir. 2001); *but see* JA510.

[14] WVSSAC recognizes Intervenor-Defendant is not a state actor and is addressing 'defendants' only in this context.

[15] Syl. pt. 2, 3, *Mayo v. WVSSAC,* 233 W. Va. 88, 96, 872 S.E.2d 224, 232 (2008).

again here that any authority delegated to WVSSAC fails to provide it with the requisite *controlling authority* over any of the member programs. In the nomenclature of *Smith,* where a school has 'practical alternatives to compliance with [the athletic association's] demands,' the authority is not controlling. *Smith,* 266 F.3d at 159.

It is undisputed that schools elect to join WVSSAC and can withdraw at any time without forgoing interscholastic sports and activities. Schools and athletes must follow the rules or face potential sanctions, yet even that provides a *choice* that mitigates against any finding of *controlling authority* – and B.P.J. cannot and has not disputed these determinations. Instead, and perhaps fatally, B.P.J. repeatedly cites the statutory language of "control, supervision and regulation of . . . interscholastic athletic . . . activities[.]"[16] B.P.J. even fails to address the necessary sequence to prove the argument, that is, the levels to which WVSSAC's actual 'control, supervision and regulation' would need to rise in order to reach to the level of controlling authority.

It remains undisputed under *Smith* that, even if WVSSAC excluded resigning schools from all participation, even if it would 'thwart' the schools' desire to 'remain a powerhouse' among the schools against which it competes, nonetheless, the ability to withdraw is a "'practical alternative to compliance with [WVSSAC's] demands,'"

---

[16] Plaintiff's Opposition (ECF No. 331) at 20ff.

such that WVSSAC does not *control* any of the member programs.[17] In contrast, it remains undisputed that Bridgeport Middle School could not withdraw from the Harrison County Board of Education -- certainly the Board has controlling authority over its schools. WVSSAC's relationship with its member schools is different, distinct, and B.P.J. relies upon the statute without addressing the particulars of West Virginia's system. B.P.J. references 'intertwinement' and 'control' but stops far short of conducting any true analysis such as that undertaken in *Smith.* Nonetheless, as WVSSAC has demonstrated here, it does not have controlling authority over its member schools: (1) schools are not forced to join, and (2) each school must affirmatively elect to participate.[18] The fact that each member school has an opportunity for input on the rules has been found *insufficient* to demonstrate *control* sufficient to federalize a program*,* just as their voluntary decision to follow those rules has.[19]

Discovery in the case below elicited a myriad of information for proving that WVSSAC does not have 'controlling authority.' B.P.J. does not address any of the criteria reviewing courts have found demonstrate 'controlling authority' nor does B.P.J. expressly counter the argument that giving WVSSAC the power to enforce

---

[17] *Smith*, 266 F.3d at 159, quoting *Cureton v. NCAA,* 198 F.3d 107, 116-18 (3d Cir. 1999).
[18] JA1378.
[19] *Smith*, 266 F.3d at 159, quoting *NCAA v. Tarkanian*, 488 U.S. 179, 195 (1988).

the eligibility rules adopted by the State Board and member schools directly against the students does not constitute "ced[ing] authority."[20] Per the only legal authority cited for the proposition of 'controlling authority' in a parallel factual context, eligibility determinations, absent more, are insufficient to federalize this private association. Eligibility determinations involve choice – and choice precludes 'controlling authority.' *Smith,* 266 F.3d at 157.

It remains undisputed that the member schools have a voluntary relationship with WVSSAC and retain the authority to withdraw from the association – B.P.J. does not refute nor deny that the power to resign was found to be a key determinant and a factor mitigating against any finding of controlling authority.[21] Indeed, B.P.J. pursued that line of questioning in deposing WVSSAC, and WVSSAC testified that schools can indeed withdraw, and private schools have done so.[22] B.P.J. has not addressed, let alone refuted, that withdrawal from WVSSAC might mean that a member school would be excluded from the championships, yet, even after withdrawing, a school nonetheless may participate

---

[20] *Id. See also* Plaintiff's Opposition (ECF No. 331) at 23ff; Indeed, the Supreme Court of West Virginia in *Jones v. West Virginia SSAC,* 218 W. Va. 52, 62, 622 S.E.2d 289, 299 (2005), speaks in terms of eligibility, yet, in *Smith,* eligibility determinations have been determined in such contexts to be insufficient to federalize an entity, absent more.

[21] *Smith,* 266 F.3d at 159.

[22] JA1408.

in sports and activities as long as it remains just that, a 'school.'[23] Indeed, the Court in *Israel* acknowledges that key factor as well – that with exclusion or resignation from WVSSAC, athletic participation was not at risk – only participation in championships.[24]

B.P.J. cites authorities that rely upon the concept of *controlling authority* without considering their weight or meaning, making the term serve as no more than a conclusion, a label. B.P.J. fails to bring the authorities to bear on the realities of WVSSAC. Perhaps more concerning, B.P.J. relies self-referentially upon the statement of 'uncontested facts' filed below – which was immediately challenged as being neither uncontested, nor facts.[25]

B.P.J. depends upon what is characterized as an inevitability that WVSSAC will enforce H.B. 3293 against B.P.J. in its determination of eligibility. However, eligibility determinations have never been found sufficient to demonstrate controlling authority.[26] Conversely, by the only authority available on that issue, eligibility determinations involve choice and are ingrained in the decision to participate, which is a choice as well. In *Smith,* then, should member schools or athletes risk sanctions by violating the regulations or rules, that choice on their part

---

[23] JA1409.
[24] *Israel,* 182 W. Va. at 457, 388 S.E.2d at 483.
[25] ECF 330.
[26] *Smith v. NCAA*, 266 F.3d 152 (3d Cir. 2001).

per *Smith* demonstrates a lack of *control* by WVSSAC. The fact that "'options [may be] unpalatable does not mean that they were nonexistent.'"[27] And it is *inter alia* that the option to be a member, or withdraw from, WVSSAC, and the option to follow the rules or face sanctions that undercuts any actionable understanding of *control* in which to anchor the Equal Protection claim.

B.P.J.'s Equal Protection Clause claims are equally dependent on WVSSAC's being a 'state actor.'[28]   That is,

> in a claim under the Fourteenth Amendment, the defendant "must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions." *DeBauche v. Trani*, 191 F.3d 499, 506 (4th Cir. 1999). Put another way, "private activity will generally not be deemed 'state action' unless the state has so dominated such activity as to convert it to state action: 'Mere approval of or acquiescence in the initiatives of a private party' is insufficient." *Id.* at 507 (citation omitted).[29]

B.P.J. has failed to prove the 'domination' that is controlling authority, such as by refuting any of the criteria identified in *Smith* and has failed to identify other decisions that weigh these factors in any sort of meaningful fashion. Where B.P.J.

---

[27] *Smith*, 266 F.3d at 156, quoting *NCAA v. Tarkanian*, 488 U.S. 179, 198 n.19 (1988).

[28] "[R]ights under the Equal Protection Clause itself arise only where there has been involvement of the State or of one acting under the color of its authority. The Equal Protection Clause does not . . . add anything to the rights which one citizen has under the Constitution against another." *United Bhd. Of Carpenters & Joiners, Local 610 v. Scott,* 463 U.S. 825, 831 (1983) (internal quotation marks and citations omitted).

[29] *Shipman v. Balt. Police Dept.,* 2014 U.S. Dist. Lexis 59733.

cites 'entwinement,' it is with no recognition of or rebuttal to *Smith*'s pronouncement that the same analysis applies whether the nomenclature is controlling authority, pervasive entwinement, public entwinement – the analysis of *control* "is no less rigorous."[30] Entwinement is where the analysis begins, not ends, and B.P.J. fails to engage with the factors relevant to that determination. Indeed, B.P.J. fails to address them in any way. Per *Peltier,* the entwinement arises out of the sufficiently close nexus between the **defendant's challenged action** and the state so that **the challenged action** may be fairly treated as that of the state itself. 37 F.4th 104, 115 (4th Cir. 2022) (emphasis added), quoting *Mentavlos v. Anderson*, 249 F.3d 301, 314 (4th Cir. 2001). Where there is no 'challenged action,' there can be no entwining.

B.P.J. identifies the challenged action as "future action" by WVSSAC. However, such future action is speculative. Member schools determine rosters in the first instance and provide rosters to WVSSAC. WVSSAC only becomes involved in eligibility determinations if eligibility in a particular instance is challenged; which is speculative unless and until such a challenge requires action by WVSSAC. Thus, it is not inevitable that WVSSAC will become involved in eligibility of every student generally; but only in specific instances where a question arises. B.P.J. does not address nor dispute that WVSSAC's physical examination form, the sole registration

---

[30] *Smith*, 266 F.3d at 160.

form WVSSAC requires from athletes for participation, is not impacted by H.B. 3293 and does not have the athletes identify themselves by gender.[31] Indeed, it remains undisputed that WVSSAC has no access to records to determine a student athlete's gender at any time and knows nothing beyond the rosters prepared and submitted by the member schools.[32] The evidence adduced in discovery is undisputed -- the only regulation that will be adopted will be adopted by the State Board and embedded in whole into WVSSAC regulations (as with the State Board's 2.0 Rule).[33] Therefore, WVSSAC's only involvement under H.B. 3293 might be to determine disputed eligibility at some remote moment,[34] which, as a matter of law, absent more, does not make it a state actor.

The Court will note that B.P.J. even now segues from delegation and authority to 'controlling authority' without any meaningful evaluation. B.P.J., the District Court, and WVSSAC address largely the same federal courts that have considered Title IX and Fourteenth Amendment challenges brought as against what might appear to be parallel athletic associations.[35] *See, e.g., Communities for Equity v. Michigan High School Athletic Association,* 80 F. Supp. 2d 729 (W. D. Mich. 2000)

---

[31] West Virginia Secondary School Activities Commission Response to Plaintiff's Motion for Preliminary Injunction (ECF No. 47-2) at Exhibit B.
[32] JA1333; JA1385; JA1494-1495.
[33] JA1393-1394, 1400, 1478. *See also* JA1692-1693.
[34] JA1399.
[35] Plaintiff's Opposition (ECF No. 331) at 23ff.

(alleging that MHSAA discriminated against female athletes based on inequities in programs including non-traditional and/or shorter seasons and different rules); *Alston v. Virginia High School League, Inc.,* 144 F. Supp.2d 526 (W. D. Va. 1999) (alleging that VHSL denied certain female public school athletes equal treatment, opportunities and benefits based on their sex in violation of Title IX[36]). Beyond those instances, the United States Court of Appeals for the Sixth Circuit considered *Yellow Springs Exempted Village School District Board of Education v. Ohio High School Athletic Association,* 647 F.2d 651 (6th Cir. 1981) (challenging coeducational teams in contact sports as a violation of Title IX), and finally, *Brentwood Academy v. Tennessee Secondary School Athletic Association,* 180 F.3d 758 (6th Cir. 1999), *rev'd* 531 U.S. 208 (2001).[37] The decisions are inapposite to the matter before the Court now, in that each involves action, and none considers the rubric of choice.

B.P.J. discounts WVSSAC's arguments underscored by *Yellow Springs Exempted Village School District Board of Education v. Ohio High School Athletic*

---

[36] *But see Yellow Springs Exempted Village School District Board of Education v. Ohio High School Athletic Association,* 647 F.2d 651, 658 (6th Cir. 1981), finding that any resolution by necessity involves the Fourteenth Amendment as well.

[37] Plaintiff's Response (ECF No. 331) does introduce one additional case that draws upon *Brentwood,* that is, *McGee v. Va. High School League, Inc.,* 2011 U.S. Dist. Lexis 110270 (W.D. Va. 2011). There, the District Court relies solely upon *Brentwood,* which pre-dates *Smith*. The passage cited is nothing more than a blanket pronouncement about statewide athletic associations, without any analysis whatsoever. Of note, *Smith* follows *Brentwood* and provides particularized handling of these issues, introducing factors to be weighed in that determination.

*Association,* 647 F.2d 651 (6th Cir. 1981), as unpersuasive. In *Yellow Springs,* the Appeals Court considered the applicability and enforcement of Title IX relative to co-educational sports, that is, whether boys and girls may play basketball on the same team.[38] Of particular note, here, however, is that the *Yellow Springs* Appeals Court concluded that the determination regarding compliance with Title IX must be made by individual schools, not the OHSAA. *Yellow Springs,* 647 F.2d at, 656 (6th Cir. 1981). Likewise, here, compliance with Title IX is for the schools themselves, not for WVSSAC. Where B.P.J. asserts that the schools are not exempt, WVSSAC agrees. The point is that the determination of whether Title IX applies to the schools is different than if Title IX applies to the WVSSAC. Title IX is not a meaningful determination relative to WVSSAC, but rather to its member schools.

B.P.J. argues without proving that WVSSAC is wrong when it asserts that embedding the State rule and determining eligibility does not constitute 'controlling authority.' B.P.J. maligns WVSSAC's position that eligibility enforcement as a matter of law is insufficient to convert WVSSAC into a state actor.[39] The parties agree that WVSSAC makes eligibility determinations when there is a dispute, that schools and students must follow WVSSAC's rules or face sanctions, that those determinations will also be made pursuant to the State Board's rule promulgated per

---

[38] *Yellow Springs,* 647 F.2d at, 656 (6th Cir. 1981)
[39] *Smith*, 266 F.3d at 159, quoting *Cureton v. NCAA,* 198 F.3d 107, 116-18 (3d Cir. 1999).

H.B. 3293[40] -- yet B.P.J. fails to concede that all of that fails to federalize WVSSAC under *Smith.* More importantly, B.P.J. fails to introduce competing authority to undercut or rebut *Smith.*

The undisputed evidence below was that the schools have a voluntary relationship with WVSSAC. Both public and private schools have retained the authority to withdraw from the association – also found by the Third Circuit to be a key determinant and a factor mitigating against any finding of control. WVSSAC testified that schools can indeed withdraw, and private schools have done so. While withdrawal means that the member schools would be excluded from the championships, they nonetheless may participate in sports and activities as long as they remain a 'school.' No school is forced to join, another key determinant, and each school must elect to participate. The fact that each member school has an opportunity for input on the rules has been found insufficient to demonstrate *control,* just as has their voluntary decision to follow them.

Among the factors these courts considered in determining the propriety of holding the associations accountable under federal law were sources of funding and whether the associations adopted the provisions that were alleged to be violations of federal law. That is, more particularly, the courts considered whether the associations are federally funded or receive support or dues from federally funded

---

[40] Plaintiff's Response (ECF No. 331) at 21-22.

programs and/or whether the associations further the objectives of federally funded programs. In terms of Equal Protection, the United States Supreme Court in *Brentwood* considered whether the Tennessee association was a 'state actor' given the depth with which its operations were intertwined with a single state's (Tennessee's) activities (as compared to the interstate impact of the NCAA[41] and of the multi-state involvements of WVSSAC[42]). The District Courts in both *Alston* and *Communities* addressed Equal Protection, considering whether the athletic (as opposed to activities) associations were 'state actors,' whether they served a public function, and/or whether they had a symbiotic relationship with the State and the regulated activity.[43] B.P.J. has failed to engage in the requisite rigorous analysis that would convert WVSSAC from a private association, into a state actor for the first time in its more than one hundred years of operation.

### C. As a Matter of Law, Eligibility Determinations Do Not Constitute an Appropriate Basis for Pre-Enforcement Review as to WVSSAC.

In an effort to circumvent the speculative nature of the claim, B.P.J. points to eligibility determinations as an enforcement action that would render WVSSAC a

---

[41] *Nat'l Collegiate Ath. Ass'n v. Tarkanian,* 109 S. Ct. 454 (1988), finding *inter alia* that NCAA "was not a state actor because it was acting under the color of its own policies rather than under the color of state law and because university did not delegate power to petitioner to take specific action against university or respondent."
[42] JA0510-0511.
[43] *See Alston v. Virginia High School League, Inc.,* 144 F. Supp.2d 526, 537 (W. D. Va. 1999).

'state actor.' B.P.J. discounts the *Smith* reasoning by asserting that the NCAA draws across state lines. WVSSAC also has an interstate footprint, including non-member schools from outside West Virginia, who are involved in WVSSAC programs.[44] More importantly, the Third Circuit's reasoning resonates precisely here: "'controlling authority' cannot and does not exist where 'member institutions currently retain the choice to risk sanctions or withdraw . . . if they do not want to abide by its rules and regulations. . . . [A]lthough this option is unpalatable, it is nonetheless an option.'" *Smith*.[45] Therefore, eligibility determinations do not constitute 'control' in that the school and/or athlete have choices. B.P.J. addresses WVSSAC's arguments substantively – albeit by raising a remote and speculative event, unrelated to H.B. 3293. Therefore, it is undisputed even now that the District Court erred in finding that WVSSAC only disputed 'state actor' in its dispositive motions.

Further, B.P.J. does not dispute that the complaints and initial declarations expressly identify WVSSAC as having policies relative to student athletes that are gender identical, neutral, and otherwise non-actionable. As for the instant legislation, B.P.J. admits that WVSSAC did not have a role in passing H.B. 3293. B.P.J. admits

---

[44] *See, e.g.,* WVSSAC Football Playoff Manual at 10
https://www.wvssac.org/sports-schedules/football/.  *See also* JA0510-0511.
[45] 266 F.3d at 160. JA505-511.

that WVSSAC was dropped from an earlier draft of the legislation and that WVSSAC appears nowhere in the statute as enrolled and signed into law. The established evidence confirms that WVSSAC has taken no action nor was it preparing to act with regard to B.P.J. or H.B. 3293. Now, at the close of briefing, it remains true that B.P.J. has never alleged that WVSSAC harmed B.P.J.; but rather, only alleges that future harm may result, which is both unidentified and speculative. For these reasons, WVSSAC asserted that this was a pre-enforcement action that should not have remained viable as against WVSSAC.

In determining ripeness and/or the propriety of pre-enforcement review, this Court has found that the

> [t]o determine whether a case is ripe for pre-enforcement review, courts "balance the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration." *Miller* [v. Brown], 462 F.3d [312] at 319 (4th Cir. 2006) (citation omitted); *see Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808, 123 S. Ct. 2026, 155 L. Ed. 2d 1017 (2003) (setting forth fitness and hardship as the two predominant factors in determining ripeness). With respect to fitness, a claim is unfit for adjudication where the possibility of injury is remote and the issues presented abstract. *Texas v. United States*, 523 U.S. 296, 301, 118 S. Ct. 1257, 140 L. Ed. 2d 406 (1998) ("A claim is not ripe . . . if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" (quoting *Thomas v. Union Carbide Agric. Products Co.*, 473 U.S. 568, 580-81, 105 S. Ct. 3325, 87 L. Ed. 2d 409 (1985))); *Miller,* 462 F.3d at 319 (to be ripe, an action in controversy must not be "dependent on future uncertainties.").[46]

---

[46] *Air Evac EMS, Inc., v. Cheatham,* 260 F. Supp. 3d 628, 636-37 (S.D. W. Va. 2017).

It is undisputed that WVSSAC has not acted. Indeed, there is no allegation that it has acted in any way that reaches B.P.J. or this issue. If, as B.P.J. urges, this Court were to undertake review of WVSSAC's handling of some abstract, future eligibility determination (which may or may not occur), the Court would be considering the scope and propriety of a contingent future event – a remote speculative event that ties WVSSAC to a litigation where it has not acted, is not alleged to have acted, and has never before in its 100+ years of existence been found actionable. As part of that abstract review process, the Court would have to speculate on the future event, a possible future outcome and adjudicate WVSSAC's inclusion here on that basis. The Court would have to distinguish *Smith* and determine that the mere specter of an eligibility determination that could or might occur regardless of the basis or the timetable, that that speculative future event alone could constitute controlling authority, could convert private corporations into state actors, could change outcome here.

Here, where the possibility of injury is remote and the issues presented abstract, pre-enforcement review is inappropriate. The balance of equities mitigates in WVSSAC's favor. B.P.J.'s claim and arguments as against the actual state actors remains – WVSSAC is unnecessary to outcome here.

**D.    The Court Should Vacate the District Court's Ruling as to WVSSAC.**

"State actor" is not a determination that can be made in a vacuum. By its express terms, 'state actor' is meaningless in the instance of a party that has not acted and therefore has no acts at issue. The District Court erred in determining that WVSSAC is a "State actor" while simultaneously failing to identify any "action" by WVSSAC related to B.P.J. upon which such a determination could be based. B.P.J.'s 'evidence' was and is insufficient to turn WVSSAC's (in)action into 'color of law.' B.P.J. identified no enforcement action that WVSSAC has taken or is expected to take with regard to the challenged legislation. It remains undisputed that WVSSAC receives no governmental funding and does not claim the benefits available to governmental actors (immunities). Further, by its direct testimony, WVSSAC ascribes to the spirit of Title IX but is not required by law to follow its precepts.

Further, B.P.J. does not dispute that the District Court erred in finding that WVSSAC raised only the state actor arguments on summary disposition. In denying WVSSAC's motion, the District Court relied upon what it found to be the 'pervasive entwinement' of WVSSAC and State. However, in doing so, the Court glossed over the particulars of WVSSAC that are different than the entities in decisions such as *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 931 (2001) and misconstrued *Peltier v. Charter Day School,* 37 F.4th 194 (4th Cir. 2022). Each of the decisions cited by the District Court and B.P.J. arise from *action: Brentwood*,

24

in which the alleged "challenged action" is the sanction imposed by the Athletic Association upon the Academy for alleged undue influence in recruiting (531 U.S. at 293); *Peltier*, in which a dress code is the "challenged action;" *Communities for Equity v. Michigan High School Athletic Association*, 80 F. Supp. 2d 729, 735 (W.D. Mich. 2000), in which the "challenged action" was the Athletic Association's alleged discrimination against female athletes *inter alia* by operating shorter seasons for female athletes.

At the close of briefing, with no 'challenged action' identified, this Court is left to find 'state action,' if at all, in inaction. WVSSAC appears as Appellant here because the District Court committed error when it went beyond finding that B.P.J. failed to produce evidence of any actionable WVSSAC action and, on a meaningfully silent record, reached the merits and concluded that "WVSSAC is a state actor." WVSSAC seeks a ruling from this Court that, to the extent that the WVSSAC's Motion for Summary Judgment was substantively addressed and denied, that was accomplished without evidence of an underlying 'action.' As a result, the District Court's conclusion that "WVSSAC is a state actor" is erroneous, premature as a matter of fact, moot as a matter of law, and, finally, unnecessary.

## CONCLUSION

The Court should reverse, or at least vacate, the order denying summary judgment as to WVSSAC.

June 15, 2023                    Respectfully submitted,

                                 */s/ Roberta F. Green*
                                 Roberta F. Green
                                 Kimberly M. Bandy
                                 Shannon M. Rogers
                                 SHUMAN MCCUSKEY SLICER
                                 1411 Virginia St. E., Suite 200
                                 Charleston, WV 25301
                                 (304) 345-1400
                                 rgreen@shumanlaw.com
                                 kbandy@shumanlaw.com
                                 srogers@shumanlaw.com

                                 *Counsel for Defendant-Appellee and*
                                 *Cross-Appellant West Virginia*
                                 *Secondary School Activities Commission*

**CERTIFICATE OF COMPLIANCE**

1.  This document complies with type-volume limits because, excluding parts

    exempted by Fed. R. App. P.32(f) (cover page, disclosure statement, table of

    contents, table of citations, statement regarding oral argument, signature

    block, certificates of counsel, addendum, attachments):

        this document contains 6,410 words.

2.  This document complies with the type-face requirements because: This

    document has been prepared in proportional spaced typeface using Microsoft

    Word and 14-point Times New Roman.

                                    */s/ Roberta F. Green*
                                    Roberta F. Green