No. 23-1078

## IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

B.P.J., by her next friend and mother, HEATHER JACKSON,

*Plaintiff-Appellant,*

v.

WEST VIRGINIA STATE BOARD OF EDUCATION, *et al.*,

*Defendants-Appellees,*

and

STATE OF WEST VIRGINIA, *et al.*

*Intervenors-Appellees.*

On Appeal from the United States District Court
for the Southern District of West Virginia (Charleston)
Case No. 2:21-cv-00316

## STATE OF WEST VIRGINIA AND LAINEY ARMISTEAD'S MOTION TO SUSPEND THE INJUNCTION PENDING APPEAL

PATRICK MORRISEY
 *Attorney General*

OFFICE OF THE WEST
VIRGINIA ATTORNEY GENERAL
1900 Kanawha Blvd., East
Building 1, Room E-26
Charleston, WV 25305
Phone: (304) 558-2021
lindsay.s.see@wvago.gov

LINDSAY S. SEE
 *Solicitor General*
 *Counsel of Record*

MICHAEL R. WILLIAMS
 *Principal Deputy Solicitor General*

*Counsel for Intervenor-Appellee State of West Virginia*

[additional counsel on signature page]

# TABLE OF CONTENTS

Introduction.................................................................................................1

Background ................................................................................................2

Standard...................................................................................................7

Argument..................................................................................................8

I.    B.P.J. Is Now Indisputably Displacing Biological Females
From Girls' Sports Opportunities ..................................................8

II.   An Injunction Pending Appeal Is No Longer Justified........................12

    A.    B.P.J. is unlikely to prevail on the merits .....................................13

    B.    The equities favor safeguarding biologically female
athletes...............................................................................15

    C.    Suspending the injunction promotes the public
interest...............................................................................19

Conclusion...............................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*,
  57 F.4th 791 (11th Cir. 2022) ........................................................3, 16

*B.P.J. v. W. Va. State Bd. of Educ.*,
  No. 2:21-CV-00316, 2023 WL 1805883
  (S.D.W. Va. Feb. 7, 2023) ..............................................................5

*Bauer v. Lynch*,
  812 F.3d 340 (4th Cir. 2016)...........................................................13

*Beltran v. Smith*,
  458 U.S. 1303 (1982)......................................................................18

*Berman v. Parker*,
  348 U.S. 26 (1954)..........................................................................19

*Bostock v. Clayton Cnty.*,
  140 S. Ct. 1731 (2020) ...................................................................15

*Brown v. Gilmore*,
  533 U.S. 1301 (2001).......................................................................20

*Brown v. Plata*,
  563 U.S. 493 (2011).........................................................................7

*Bucklew v. Precythe*,
  139 S. Ct. 1112 (2019) ...................................................................13

*City of Cleburne v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985).........................................................................14

*Clark ex rel. Clark v. Ariz. Interscholastic Ass'n*,
  886 F.2d 1191 (9th Cir. 1989).....................................................17, 19

*Cohen v. Brown Univ.*,
  101 F.3d 155 (1st Cir. 1996) .......................................................3, 15

*Di Biase v. SPX Corp.*,
  872 F.3d 224 (4th Cir. 2017)...........................................................18

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

*Equity in Athletics, Inc. v. U.S. Dep't of Educ.,*
291 F. App'x 517 (4th Cir. 2008) ........................................................ 20

*Grimm v. Gloucester Cnty. School Bd.,*
972 F.3d 586 (4th Cir. 2020) ........................................................ 13, 15

*Guerra v. Scruggs,*
942 F.2d 270 (4th Cir. 1991) ........................................................ 19

*Horne v. Flores,*
557 U.S. 433 (2009) ........................................................ 7

*Karr v. Schmidt,*
401 U.S. 1201 (1971) ........................................................ 20

*L.J. v. Wilbon,*
633 F.3d 297 (4th Cir. 2011) ........................................................ 7

*Lafler v. Athletic Bd. of Control,*
536 F. Supp. 104 (W.D. Mich. 1982) ........................................................ 3

*Maryland v. King,*
567 U.S. 1301 (2012) ........................................................ 19

*McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck,*
370 F.3d 275 (2d Cir. 2004) ........................................................ 16

*Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Okla.,*
468 U.S. 85 (1984) ........................................................ 19

*Nguyen v. INS,*
533 U.S. 53 (2001) ........................................................ 13

*O'Connor v. Bd. of Educ. of Sch. Dist. 23,*
449 U.S. 1301 (1980) ........................................................ 3

*Parker v. Franklin Cnty. Cmty. Sch. Corp.,*
667 F.3d 910 (7th Cir. 2012) ........................................................ 15

*Peeples v. Brown,*
444 U.S. 1303 (1979) ........................................................ 18

iii

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

*Sampson v. Murray,*
  415 U.S. 61 (1974)................................................................18

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008)................................................................19

*Yellow Springs Exempted Vill. Sch. Dist. Bd. of Educ. v. Ohio
  High Sch. Athletic Ass'n,*
  647 F.2d 651 (6th Cir. 1981).............................................3

**Statute**

W. VA. CODE § 18-2-25d.............................................2, 3, 5

**Rule**

FED. R. APP. P. 8.......................................................................7

**Other Authorities**

B. Glenn George,
  *Forfeit: Opportunity, Choice, and Discrimination Theory
  Under Title IX,*
  22 YALE J.L. & FEMINISM 1 (2010)..............................16

David A. Feigley,
  *The Role of Winning in Youth Sports,*
  RUTGERS YOUTH SPORTS RESEARCH COUNCIL (Apr. 29, 2020)..................17

DAVID G. KNIBB,
  FEDERAL COURT OF APPEALS MANUAL
  (7th ed. May 2023 update).................................................7

iv

**TABLE OF AUTHORITIES**
(*continued*)

**Page(s)**

Dionne L. Koller,
*Not Just One of the Boys: A Post–Feminist Critique of Title
IX's Vision for Gender Equity in Sports*,
43 CONN. L. REV. 401 (2010).............................................................16

Kimberly A. Yuracko,
*The Culture War over Girls' Sports: Understanding the
Argument for Transgender Girls' Inclusion*,
67 VILL. L. REV. 717 (2022) ............................................................17

Rocio de Lourdes Cordoba,
*In Search of A Level Playing Field:* Baca v. City of Los
Angeles *As A Step Toward Gender Equity in Girls' Sports
Beyond Title IX*,
24 HARV. WOMEN'S L.J. 139 (2001)...................................................16

Lidewij Sophia Boogers, et al.,
*GnRH Analogue and Estradiol Treatment*, 107 J. OF
CLINICAL ENDOCRINOLOGY & METABOLISM 3805 (2022)...........................14

Matthew Mitten & Stephen F. Ross,
*A Regulatory Solution to Better Promote the Educational
Values and Economic Sustainability of Intercollegiate
Athletics*,
92 OR. L. REV. 837 (2014).................................................................16

Taylor Allen,
*I'm A Middle-School Female Athlete, Fighting With
Champions Like Martina Navratilova To Protect Women's
Sports*, FOX NEWS (May 10, 2020, 10:00 AM)...................................6

## INTRODUCTION

Recognizing the biological differences between male and female athletes, the West Virginia Legislature passed H.B. 3293 to preserve fairness and competitiveness in certain school sports. Like many laws, the Act made some trade-offs—but it ultimately represented, in the Legislature's careful judgment, the best outcome for all young competitors in the State. After extensive discovery and extended analysis, a once-reluctant district court concluded, too, that the law appropriately and constitutionally advanced meaningful state objectives. A few months ago, this Court thought differently and enjoined the State from enforcing the Act against the plaintiff here. Although the Court did not explain its reasoning at the time, it evidently agreed with B.P.J.'s argument that an injunction pending appeal would not hurt anyone. Time has now shown otherwise.

Over the past spring track season, B.P.J. has pushed more and more biologically female athletes aside. B.P.J.'s athletic skills have markedly improved. By the State's count, B.P.J. displaced over 100 different girls in competitive rankings this spring track-and-field season. Worse, B.P.J. denied two girls the chance to compete in conference championships. The displaced girls will never be able to recover those opportunities. This broad displacement contradicts what B.P.J. told the Court a few months ago—that not one "single person" would be harmed by enjoining this validly enacted State law, ECF 49, at 1. We now know that *dozens* of young student-athletes have already been harmed.

1

The only way to look past the harm that this Court's injunction has caused is to dismiss the displaced athletes' interest in competing on a sports team in a fair competition. But that interest, of course, is the very same sort of interest that B.P.J. said justified the injunction pending appeal in the first place. So no matter how one approaches this issue, the outcome is plain: The present injunction should not stand. The Court should instead vacate the injunction pending appeal to avoid harming more girls in the upcoming cross-country season.

## BACKGROUND

Two years ago, West Virginia adopted the Act, which requires public schools to designate sports teams as either male, female, or coed based on biological sex at birth. W. VA. CODE § 18-2-25d(c)(1). Once teams are designated, biological males may not compete in sports or on teams in which "selection for such teams is based upon competitive skill or the activity involved is a contact sport." *Id.* § 18-2-25d(c)(2). They remain free to compete on all male or coed teams. *Id.* 18-2-25d(c)(3).

The West Virginia Legislature drew this line to "promote equal opportunities for the female sex." *Id.* § 18-2-25d(a)(5). It emphasized that "sex-based classifications that make overbroad generalizations or perpetuate" notions about the "inferiority" of one sex are improper. *Id.* § 18-2-25d(a)(2). But the Legislature also recognized that "inherent" biological "differences" mean that "biological males and biological females are not in fact similarly situated" in "sports involving competitive skill or contact." *Id.* § 18-2-

2

25d(a)(2)-(3).  If these differences were ignored, then "[b]iological males would displace females to a substantial extent."  *Id.* § 18-2-25d(a)(3) (citing *Clark v. Ariz. Interscholastic Ass'n*, 695 F.2d 1126, 1131 (9th Cir. 1982)).

The Legislature's judgment was nothing new.  For as long as schools have offered sports teams, it has been the "norm" to designate student athletes to them by sex.  *Cohen v. Brown Univ.*, 101 F.3d 155, 177 (1st Cir. 1996).  Otherwise, there is "a substantial risk that boys would dominate the girls' programs and deny them an equal opportunity to compete in interscholastic events."  *O'Connor v. Bd. of Educ. of Sch. Dist. 23*, 449 U.S. 1301, 1307 (1980) (Stevens, J., in chambers).  Separate teams also "aid in th[e] equalization" of athletics programs for men and women by "mak[ing] monitoring of the opportunities provided easier."  *Yellow Springs Exempted Vill. Sch. Dist. Bd. of Educ. v. Ohio High Sch. Athletic Ass'n*, 647 F.2d 651, 657 (6th Cir. 1981).  And sometimes, co-ed teams cause a "detrimental effect on the safety of the participants."  *Lafler v. Athletic Bd. of Control*, 536 F. Supp. 104, 107 (W.D. Mich. 1982).  For these and other reasons, many have recognized that "commingling of the biological sexes in the female athletics arena would significantly undermine the benefits" that separate sports teams "afford[] to female student athletes."  *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 819 (11th Cir. 2022) (Lagoa, J., specially concurring).  Hence, on June 8, 2023, Missouri became the 22nd State to have passed a law similar to West Virginia's, with more States considering such laws right now.

3

Plaintiff B.P.J.—a 13-year-old biological male who identifies as a girl—thought that the Legislature was wrong to try to preserve competitive fairness, equity, and safety in this way. *See* ECF No. 48-2, at 1727. B.P.J. thinks that sports teams should be designated by gender identity rather than biology. *Id.* at 1725-26. The district court understood B.P.J. to argue that, contrary to the Legislature's findings, "transgender girls are similarly situated to cisgender girls for purposes of athletics at the moment they verbalize their transgender status." *Id.* at 1729.

But like other courts before, the district court saw that "[w]hether a person has male or female sex chromosomes determines many of the physical characteristics relevant to athletic performance." ECF No. 48-2, at 1711. Conversely, even B.P.J.'s expert recognized that "gender identity … is not a useful indicator of athletic performance." ECF No. 48-2, at 819. B.P.J. suggests that, at least for B.P.J., inherent physiological differences may be wiped away with pharmacological intervention. Yet not all people who identify as transgender take hormones, and "there is much debate over whether and to what extent" these hormones make a difference even for those who do. *Id.* at 1728.

Considering facts like these, the district court held that the State struck an appropriate balance in the Act. Yes, the district court had preliminarily enjoined the law based on a partial record. But after reviewing the "thousands of pages filed by the parties in this case," ECF No. 48-2, at 1728, the court recognized that "on average, males outperform females athletically because of

4

inherent physical differences between the sexes." *Id.* at 1727. Ultimately, "the [S]tate is permitted to legislate sports rules" based on biological sex "because sex, and the physical characteristics that flow from it, are substantially related to athletic performance and fairness in sports." *Id.* at 1728-29. And although B.P.J. made "repeated argument[s] to the contrary," the Act ensures that "transgender girls are not excluded from school sports entirely." *Id.* at 1732. In short, "separating athletic teams based on biology is substantially related to the state's important interest in providing equal athletic opportunities to females, who would otherwise be displaced if required to compete with males." *B.P.J. v. W. Va. State Bd. of Educ.*, No. 2:21-CV-00316, 2023 WL 1805883, at *2 (S.D.W. Va. Feb. 7, 2023). And given that, the Act respected the Constitution's Equal Protection Clause and Title IX.

B.P.J. then asked this Court to enjoin the Act again, insisting that any "continued participation" in girls' athletics would "harm no one." ECF No. 49, at 14. B.P.J. downplayed any concerns about allowing a biological male to compete in girls' sports, dubbing them "conjecture," "speculation," and "abstraction." *Id.* at 15 (cleaned up). Elsewhere, B.P.J. stressed that "B.P.J. regularly finishes near the back of the pack," suggesting that B.P.J. poses no threat to fair competition. ECF No. 52, at 21. Thus, the "only actual inequity," B.P.J. maintained, would be "depriving B.P.J. [of] the once-in-a-lifetime opportunity to play middle school sports as [a] girl." ECF No. 49, at 14. In an unexplained 2-1 order, this Court reinstated an injunction against the Act. *See* ECF No. 50.

Yet the last few months have confirmed that the displacement harms identified by the State, the district court, and many courts before were real. This past spring, B.P.J. competed in discus and shot-put events with the Bridgeport Middle School girls' track-and-field team. Mot.App.1-2.[1] Statistics show that B.P.J. is throwing farther than ever before—and improving much faster—than biologically female classmates. *Id.* In fact, B.P.J. has become one of Bridgeport's top three throwers in girls' shot put and discus. *Id.* at 13. Only the top three athletes in those events can advance to the conference championship, *id.* at 27-28, so B.P.J.'s success left other girls sitting at home. B.P.J. went on to finish fourth in discus and sixth in shot put at the championship—competitively displacing many girls along the way. *Id.* In sum, just this spring, B.P.J. has beaten over 100 different girls, competitively displaced them over 280 times, consistently ranked in the top 10 of track-and-field events, and denied multiple girls spots in the conference championship. *Id.* at 17-30. As one young West Virginian put it: "You might think that this isn't a big deal—that middle school girls like me don't really care. But we do care … a lot." Taylor Allen, *I'm A Middle-School Female Athlete, Fighting With Champions Like Martina Navratilova To Protect Women's Sports*, Fox News (May 10, 2020, 10:00 AM), https://fxn.ws/3o3awfb.

---

[1] In the attached track-and-field records, B.P.J.'s name has been redacted and replaced with "B.P.J." But because the records are publicly available, the names of the other competitors have not been redacted.

West Virginia's fall cross-country season starts in a few weeks, and B.P.J. is expected to compete on the girls' team again. As B.P.J. becomes an eighth-grader, it is likely that B.P.J.'s unusual improvement and advancement in athletics will continue apace, pushing more biological girls down the cross-country standings. In other words, it is reasonable to expect that B.P.J.'s displacement of female athletes will continue throughout the fall unless this Court promptly intervenes.

## STANDARD

"The power of a court of equity to modify a decree of injunctive relief is long-established, broad, and flexible." *Brown v. Plata*, 563 U.S. 493, 542 (2011) (cleaned up). And under Federal Rule of Appellate Procedure 8, this Court may suspend an injunction pending appeal.[2] When a "significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest," "a court abuses its discretion when it refuses to modify an injunction … in light of such changes." *Horne v. Flores*, 557 U.S. 433, 447 (2009) (cleaned up); *accord L.J. v. Wilbon*, 633 F.3d 297, 304-05 (4th Cir. 2011). Usually, the issue of whether to modify or suspend in light of changed circumstances "will turn on whether appellant … still qualifies" for injunctive relief "given those new circumstances." DAVID G. KNIBB, FEDERAL COURT OF

---

[2] Any motion to suspend in the district court would be impracticable, as that court would still be bound by this Court's order entering the injunction pending appeal. *See* FED. R. APP. P. 8(a)(2)(A)(i). B.P.J. opposes this motion. The State Board of Education and W. Clayton Burch do not oppose. The other Appellees take no position on the motion.

APPEALS MANUAL § 21:7 (7th ed. May 2023 update); *see also* ECF No. 48-1, at 14-15 (describing the relevant standard for injunctive relief here).

## ARGUMENT

The results from the recent spring track-and-field season speak for themselves: B.P.J. is displacing girls out of top spots in competition and off of coveted roster spots at championship and other meets. This undeniable, quantitative evidence constitutes a significant change that make it inequitable to leave the injunction in place because it will injure yet more girls in the fall season.

## I.    B.P.J. Is Now Indisputably Displacing Biological Females From Girls' Sports Opportunities.

In pressing for an injunction pending appeal, B.P.J. repeatedly dismissed the idea that B.P.J.'s participation in girls' sports would affect female athletes. Indeed, B.P.J. flatly declared that there is "*no one* in West Virginia who will suffer cognizable harm from allowing B.P.J. to participate on girls' teams." ECF No. 34-1, at 25 (emphasis added). Defendants' concerns that biological females could be pushed down the standings or deprived of key spots on sports teams were said to be "rampant speculation about imagined inequities." *Id.* Indeed, B.P.J. opined—without evidence—that "there is exactly zero basis to think that any of Defendants' hypotheticals will arise while this case is on appeal." *Id.*

B.P.J.'s own experiences during the recent spring track-and-field season now provide all the "basis" for establishing "inequities" that Defendants would

8

ever need.  B.P.J. has recently climbed up the rankings, pushing biologically female students off the leaderboard and taking limited spots at track meets that would have otherwise gone to others.

Start with lost chances to compete.  To participate in a conference championship event, track-and-field athletes must finish in the top-three at their school, judged by their season-best performances.  B.P.J. rapidly rose up the standings this year, consistently finishing in the top 10 in both shot put and discus events.  Mot.App.17-30.  This quick rise gave B.P.J. a ticket to the conference championship in both events (as the top finisher in shot put did not compete), which pushed girls like eighth-grader A.C., out.  *Id.* at 27-28.  The tables below show the pre-conference champion stats for those events; B.P.J. got a new personal best in discus at the conference championship.

| 2023 Girls' Shot Put – Bridgeport Middle School | | | |
|:---:|:---:|:---:|:---:|
| *Place* | *Grade* | *Student* | *Best Distance* |
| 1 | 8 | K.M. | 32' 4" |
| 2 | 8 | I.M. | 32' .05" |
| 3 | 7 | A.V. | 28' 6" |
| **4** | **7** | **B.P.J.** | **27' 0"** |
| 5 | 8 | A.C. | 24' 1" |
| 6 | 7 | O.R. | 22' 5" |
| 7 | 8 | L.D. | 21' 10.5" |
| 8 | 7 | E.C. | 21' 1" |
| 9 | 8 | L.S. | 19' 3" |

9

| 2023 Girls' Discus – Bridgeport Middle School | | | |
|:---:|:---:|:---:|:---:|
| *Place* | *Grade* | *Student* | *Best Distance* |
| 1 | 8 | I.M. | 75' 0" |
| **2** | **7** | **B.P.J.** | **66' 0"** |
| 3 | 8 | L.D. | 57' 2" |
| 4 | 8 | A.C. | 55' 2" |
| 5 | 8 | K.M. | 53' 1.5" |
| 6 | 7 | A.V. | 52' 8.5" |
| 7 | 8 | L.S. | 45' 3" |
| 8 | 7 | E.C. | 42' 2" |
| 9 | 6 | A.S. | 39' 2" |

This story repeated itself at a post-championship, statewide middle-school invitational, when B.P.J. took a spot in discus and bumped girls like Lincoln Middle School seventh grader E.M. and Buckhannon-Uphsur seventh grader K.S. even further down the ladder. *Id.* at 28; *see also id.* at 32 (noting only three girls per event could compete). Meanwhile, B.P.J. got a new personal best in shot put at that event, too. Biological girls are being denied the chance to compete at and win in meets because of a biological boy.

Next consider lost placements. Since the Court entered the injunction, B.P.J. has displaced over 100 different girls while depriving a biological girl of a top-10 finish in most of the events in which B.P.J. competed. Mot.App.17-30. It may have been right to say that B.P.J. "regularly finishe[d] near the back of the pack" last year, ECF No. 52, at 21, when B.P.J. averaged a 47th place finish in shot put and 32nd place finish in discus. But no longer. This spring,

on average, B.P.J. finished 10th in shot put and 9th in discus.  Mot.App.1-2. And this trend will likely continue, as B.P.J. placed consecutively higher in each regular-season discus event.  Indeed, B.P.J. was one of the few seventh-grade athletes to march up the girls' rankings at the conference championship. *Id.* at 17-30.  All told, B.P.J. displaced girls at various spring meets over 280 times.  *Id.*

| 2023 Girls' Discus – Girls Displaced by B.P.J. | | | | |
|---|---|---|---|---|
| *Date* | *Meet* | *Place* | *Field* | *Displacements* |
| 03/25/23 | Connect Bridgeport | 13 | 38 | 25 |
| 04/07/23 | Buckhannon-Upshur | 12 | 29 | 17 |
| 04/12/23 | Harrison County | 8 | 18 | 10 |
| 04/15/23 | Pioneer | 7 | 30 | 23 |
| 04/20/23 | Bobcat | 6 | 40 | 34 |
| 04/29/23 | Conference Championship | 4 | 23 | 19 |
| 05/13/23 | State Invitational | 15 | 39 | 24 |
| **Total Displacements** | | | | 152 |

| 2023 Girls' Shot Put – Girls Displaced by B.P.J. | | | | |
|---|---|---|---|---|
| *Date* | *Meet* | *Place* | *Field* | *Displacements* |
| 03/25/23 | Connect Bridgeport | 11 | 41 | 30 |
| 04/07/23 | Buckhannon-Upshur | 18 | 28 | 10 |
| 04/12/23 | Harrison County | 6 | 20 | 14 |
| 04/15/23 | Pioneer | 10 | 31 | 21 |
| 04/20/23 | Bobcat | 10 | 44 | 34 |
| 04/29/23 | Conference Championship | 6 | 26 | 20 |
| **Total Displacements** | | | | 129 |

These statistics also show that B.P.J. is outpacing girls in performance growth at an unusual rate. Some year-over-year improvement is expected, of course. For example, over the course of the spring, the two biological girls from Bridgeport who went to the conference championships in shot put had improved their personal-best distances by roughly 32% and 9%. Mot.App.35-36, 39. But with similar training, B.P.J.'s best distance improved by 53% in that event (18' 10" to 28' 10"). *Id.* at 1.

The numbers look no more equal when comparing members of B.P.J.'s same grade. In discus, B.P.J.'s personal best improved by 38% (49' 7" to 68' 7"). Mot.App.1-2. The two other seventh graders, again training in much the same way, improved by only about 11% and 19% over the course of the spring. *Id.* at 39-40.

The upshot, then, is obvious: If B.P.J. improves similarly in cross-country running, B.P.J. will likely displace even more teenage girls this fall. Championship spots will go to a biological male, and biological girls will drop further down the standings. It's no longer accurate to say that B.P.J.'s participation is proceeding "without incident." ECF No. 34-1, at 5. And B.P.J. was wrong to declare that "[t]here is no risk" that B.P.J.'s performance would markedly improve; it already has. ECF No. 49, at 15 n.10.

## II.    An Injunction Pending Appeal Is No Longer Justified.

The parties' now-submitted briefs, combined with the changed circumstances described above, make it even plainer that no injunction is justified here. B.P.J. acknowledged that the injunction could be modified if

12

B.P.J. started displacing more girls. *See* ECF No. 49, at 15 n.10. We're there now.

### A.    B.P.J. is unlikely to prevail on the merits.

B.P.J. remains unlikely to prevail under either the Equal Protection Clause or Title IX. *See* ECF No. 89, at 33-53. As for equal protection, the Act designates sports teams based on biological sex, not gender identity. *Id.* at 18-21. This distinction is valid because the sex of an athlete matters in sports. *Id.* Males and females "are not physiologically the same for purposes of physical" activities. *Bauer v. Lynch*, 812 F.3d 340, 350 (4th Cir. 2016). *Bauer*'s logic controls here. *Grimm v. Gloucester County School Bd.*, 972 F.3d 586, 618 (4th Cir. 2020), did not overrule that common-sense conclusion, and B.P.J. never addresses *Bauer*, let alone distinguish it. Sex-specific sports advances equal athletic opportunities for female athletes. ECF No. 89, at 41-49. And the Act tightly fits this interest. *Id.* It validly requires B.P.J. and all other biologically male athletes to compete in male sports.

B.P.J. has often attacked the Act for purportedly not addressing B.P.J.'s individual circumstances, but that argument fails, too. Despite the Act's near-perfect tailoring, West Virginia need not use a classification "capable of achieving its ultimate objective in every instance." *Nguyen v. INS*, 533 U.S. 53, 70 (2001). A perfect fit is not required. *Id.* at 70. And labeling a claim "facial or as-applied … does not speak … to the substantive rule of law." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1127 (2019). Courts consider whether the State's "classification is valid as a general matter, not merely to the

specifics of the case before" it. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446 (1985). B.P.J. mistakes the substantive rule for the desired relief, ECF No. 89, at 49-53, and has never explained why the ordinary equal-protection principles don't apply here. This error dooms the equal-protection claim.

And in truth, B.P.J.'s "individual circumstances" argument now suffers a second problem: Those circumstances now cut against B.P.J. As should be clear by this point, B.P.J. is increasingly moving girls down leaderboards and out of competitions. So unlike before, B.P.J. is consistently finishing near the *top* of the pack. These "individual circumstances" suggest that B.P.J.'s claim should not prevail under B.P.J.'s own (incorrect) as-applied theory; B.P.J. can no longer claim minimal effects from B.P.J.'s participation by virtue of a lack of athletic prowess.

Nor can B.P.J. establish that the hormones B.P.J. takes have rectified any inherent advantage; B.P.J.'s statistically anomalous performance leap suggests otherwise. *See also, e.g.*, Lidewij Sophia Boogers, et al., *Transgender Girls Grow Tall: Adult Height Is Unaffected by GnRH Analogue and Estradiol Treatment*, 107 J. OF CLINICAL ENDOCRINOLOGY & METABOLISM 3805 (2022), https://bit.ly/3jW1PRK. And if B.P.J. continues this atypical ascent in girls' sports, then more female athletes will be sidelined. What's more, B.P.J.'s rapid rise confirms that these athletes' "circumstances" can evolve quickly, confirming that any standard focused on gender-identity and perceived-competitive equality would be "difficult," if not impossible, "to

administer." ECF No. 89, at 20; *see also id.* at 69. Thus, B.P.J.'s new circumstances have shown that female athletes are being deprived of opportunities, and they tangibly illustrate why sex-specific sports are needed.

B.P.J.'s Title IX claim is not likely to succeed, either. That statute forbids schools from treating individuals "worse than others who are similarly situated" based on sex. *Grimm*, 972 F.3d at 618 (cleaned up). But B.P.J. is not "similarly situated" to female athletes because B.P.J. is not biologically male. ECF No. 89, at 54-69. And the facts increasingly show that B.P.J. has inherent physiological advantages over biologically female peers. That reality alone sinks B.P.J.'s claim. So does Title IX's text. Title IX deals with sex, not gender identity. *Id.* at 58-63. It allows—and in some instances requires—sex distinctions when sex is relevant to the classification. *Id.* Sex is a relevant characteristic in sports. *Cohen*, 101 F.3d at 176–78. And neither *Bostock v. Clayton County.*, 140 S. Ct. 1731, 1753 (2020), nor *Grimm* forbid sex-specific sports. ECF No. 89, at 64-69.

## B. The equities favor safeguarding biologically female athletes.

Whatever might have been the case before, the equities now firmly weigh against any injunction.

Participating in fair interscholastic competition matters to West Virginia girls. "[N]umerous studies have shown that the benefits of participating in team sports can have life-long positive effects on women." *Parker v. Franklin Cnty. Cmty. Sch. Corp.*, 667 F.3d 910, 916 (7th Cir. 2012). In fact, "[g]irls who play sports stay in school longer, suffer fewer health

problems, enter the labor force at higher rates, … are more likely to land better jobs," and are "more likely to lead." *Adams*, 57 F.4th at 820 (Lagoa, J., concurring); *see also*, *e.g.*, Dionne L. Koller, *Not Just One of the Boys: A Post–Feminist Critique of Title IX's Vision for Gender Equity in Sports*, 43 CONN. L. REV. 401, 413-14 (2010) (describing other positive effects of participation). These participation benefits particularly flow from early sports participation during a girl's younger years. *See, e.g.*, B. Glenn George, *Forfeit: Opportunity, Choice, and Discrimination Theory Under Title IX*, 22 YALE J.L. & FEMINISM 1, 43 (2010) ("Targeting the development of sports in middle and high schools, if not elementary schools, will impact far more girls in the short run and may produce a higher yield of long-term benefits for women."); Rocio de Lourdes Cordoba, *In Search of A Level Playing Field:* Baca v. City of Los Angeles *As A Step Toward Gender Equity in Girls' Sports Beyond Title IX*, 24 HARV. WOMEN'S L.J. 139, 158-59 (2001) (describing the particular helpfulness of athletics in helping girls "avoid many of the social problems generally associated with adolescence").

And winning matters to these young athletes, too. "A primary purpose of competitive athletics is to strive to be the best." *McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 294-95 (2d Cir. 2004). "[T]he chance to be champions" is "fundamental to the experience of sports." *Id.* at 295. Winning is about more than feelings—it "provides important life lessons to the participating student-athletes." Matthew Mitten & Stephen F. Ross, *A Regulatory Solution to Better Promote the Educational Values and*

*Economic Sustainability of Intercollegiate Athletics*, 92 OR. L. REV. 837, 877 n.25 (2014); *see also, e.g.*, David A. Feigley, *The Role of Winning in Youth Sports*, RUTGERS YOUTH SPORTS RESEARCH COUNCIL (Apr. 29, 2020), https://bit.ly/3NvcgXg (describing the benefits of winning). Even those who insist that sports teams should be defined by gender identity acknowledge that being deprived of opportunities to win causes biological girls genuine "pain," especially given that "Title IX itself values competitive glory, recognition, and rewards for accomplishments." Kimberly A. Yuracko, *The Culture War over Girls' Sports: Understanding the Argument for Transgender Girls' Inclusion*, 67 VILL. L. REV. 717, 743 (2022). That is why B.P.J. has never once disputed that biological girls can suffer harm from being pushed out of meets and competitions or by being displaced in the competitive standings by a biological male.

Instead, B.P.J. has incorrectly insisted that not one single person has been impacted by B.P.J.'s involvement. *See* ECF 49, at 1. But without belaboring the point, that's no longer true. B.P.J. has displaced over 100 different girls over 280 times and deprived a girl of a top-10 finish in most of the events in which B.P.J. has competed since the injunction. And B.P.J. is now denying female athletes competition opportunities by pushing them out of two events at both the conference championships and the statewide, season-ending meet. When males displace females "even to the extent of one player … the goal of equal participation by females in interscholastic athletics is set back, not advanced." *Clark ex rel. Clark v. Ariz. Interscholastic Ass'n*, 886

F.2d 1191, 1193 (9th Cir. 1989). Female competitors will forever lose the chance to compete and win in these middle-school years while this injunction remains in place.

B.P.J.'s claimed harms do not outweigh these displacement harms. B.P.J. is not being barred from fairly competing. B.P.J. has simply chosen not to compete on any team other than the girls' teams. Courts are often reluctant to give weight to any harms that a plaintiff voluntarily assumes. *See Di Biase v. SPX Corp.*, 872 F.3d 224, 235 (4th Cir. 2017) (finding that plaintiffs could not claim irreparable harm from lack of insurance where they had not pursued other options to obtain insurance).

To be sure, B.P.J. insists that competing on boys' or coed teams would "inflict[] stigma and [unspecified] harm." ECF No. 138, at 35 n.8; *see also* ECF No. 34-2, at 308 (describing feelings about running with boys). But it is not obvious why this stigma would arise when B.P.J.'s community has been supportive. *See* ECF No. 34-2, at 307-08; *id.* at 312-13. No matter, as courts are appropriately reluctant to find irreparable harm from stigma, feelings, reputational harm, and the like. *See, e.g., Peeples v. Brown*, 444 U.S. 1303, 1304-05 (1979) (Rehnquist, J., in chambers) (holding that "stigmatiz[ation]" and "traumatic rejection" did not establish "the necessary irreparable injury" for an injunction); *Beltran v. Smith*, 458 U.S. 1303, 1305 (1982) (a petitioner's claim "that he is more comfortable and feels safer where he is" "does not rise to the level of irreparable injury"); *Sampson v. Murray*, 415 U.S. 61, 91 (1974) (holding that "humiliation" and other alleged harms did not support

18

injunction); *Guerra v. Scruggs*, 942 F.2d 270, 274-75 (4th Cir. 1991) (holding that "stigma" and "damage to his reputation" did not "rise to the … level of irreparable injury justifying an injunction"). So while the State always wants each of its students to view his or her sports experience positively, B.P.J.'s negative feelings do not justify the extraordinary relief of an injunction. And if those considerations are relevant to the analysis, then the girls displaced by B.P.J. are also suffering hurt feelings and reputational harm that cannot be ignored.

Considering all the above, B.P.J. has not sufficiently shown that any irreparable injury would overcome the other interests of West Virginia's female athletes. No injunction can stand, then. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22-23 (2008).

### C.     Suspending the injunction promotes the public interest.

Ensuring equal opportunities for female athletes promotes the public interest. *See Clark*, 886 F.2d at 1193. And "fostering competition among amateur[s]" serves the public interest, too. *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 117 (1984). The injunction on appeal has defeated both these interests.

The injunction also forbids West Virginia from enforcing a valid law to prevent ongoing harm it was designed to stop. "Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (cleaned up); *see also Berman v. Parker*,

348 U.S. 26, 32 (1954) ("Subject to specific constitutional limitations, when the legislature has spoken, the public interest has been declared in terms well-nigh conclusive."). And neither Title IX nor the "Equal Protection Clause have robbed the States of their traditionally recognized power to run their school systems in accordance with their own best judgment." *Karr v. Schmidt*, 401 U.S. 1201, 1202 (1971) (Black, J., in chambers); *accord Equity in Athletics, Inc. v. U.S. Dep't of Educ.*, 291 F. App'x 517, 524 (4th Cir. 2008) (finding it is in the public interest to allow a public educational institution to "to chart its own course in providing athletic opportunities without judicial interference or oversight, absent a clear showing that it is in violation of the law" (cleaned up)).

Especially given that courts should be slow to issue such injunctions, *Brown v. Gilmore*, 533 U.S. 1301, 1303 (2001) (Rehnquist, C.J., in chambers), this Court should be quick to dissolve it once the injunction's harms become apparent. They have.

## CONCLUSION

For all these reasons, the Court should suspend the injunction pending appeal and allow the Act to take effect as to all West Virginia athletes.

20

Respectfully submitted,

PATRICK MORRISEY
   ATTORNEY GENERAL

Lindsay S. See
   *Solicitor General*

/s/ Michael R. Williams
Michael R. Williams
   *Principal Deputy Solicitor General*

OFFICE OF THE ATTORNEY GENERAL
OF WEST VIRGINIA
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25301
(304) 558-2021

*Counsel for Intervenor-Appellee*
*State of West Virginia*

/s/ John J. Bursch
John J. Bursch
Christiana M. Kiefer
ALLIANCE DEFENDING FREEDOM
440 First Street, NW, Suite 600
Washington, DC 20001
jbursch@ADFlegal.org
ckiefer@adflega.org
(616) 450-4235

Johannes S. Widmalm-Delphonse
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy.
Lansdowne, VA 20176
jwidmalmdelphonese@ADFlegal.org
(571) 707-4655

Jonathan A. Scruggs
Jacob P. Warner
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
jscruggs@ADFlegal.org
jwarner@ADFlegal.org
(480) 444-0020

*Counsel for Intervenor-Appellee*
*Lainey Armistead*

Dated:  July 11, 2022

22

**CERTIFICATE OF COMPLIANCE**

1.      This motion complies with Fed. R. App. P. 27(d)(2)(A) because it contains 4,873 words.

2.      This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), as required by Fed. R. App. 27(d)(1)(E), because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point CenturyExpd BT font.

/s/ Michael R. Williams
Michael R. Williams

23